UNITED STATES of America,
Plaintiff-Appellee,

v.

Peter J. LABARBERA,
Defendant-Appellant.

No. 78–5014.

United States Court of Appeals,
Fifth Circuit.

Sept. 28, 1978.

Thomas R. Taggart, Alex L. Zipperer, III, Savannah, Ga., for defendant-appellant.

William T. Moore, Jr., U. S. Atty., Kathrine L. Henry, Asst. U. S. Atty., Savannah, Ga., for plaintiff-appellee.

Before RONEY, RUBIN and VANCE, Circuit Judges.

RONEY, Circuit Judge:

On this appeal from defendant's four count conviction for violating the gun laws of the United States, we reverse on the ground that defendant did not receive a fair trial because of improper prosecutorial comments both during the taking of evidence and on closing argument, and because of trial error in permitting cross-examination of defendant for impeachment purposes on records of certain arrests that were neither felonies nor followed by convictions. Contrary to defendant's argument, the evidence sufficiently supported the conviction so that a retrial is permitted. *See Burks v. United States*, —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

On March 15, 1977, a Government informant and an undercover agent of the Bureau of Alcohol, Tobacco & Firearms entered defendant's bar and talked with defendant about buying some guns from him. Defendant told them that he had a thirty-eight caliber revolver he would sell for $75. The agents returned to the bar shortly after midnight with the money. Defendant went into a restroom where he gave the gun to Robert Smith, a co-indictee who pled guilty and testified against defendant at trial. Defendant and the ATF agent then walked across the street, defendant returned inside the bar, and Smith came out and gave the agent the revolver in return for $75.

The agents returned to the bar on subsequent occasions to try to purchase additional guns. On April 19, 1977, under similar circumstances, they purchased the sawed-off shotgun which constitutes the main basis of the indictment. This time, defendant used co-indictee Ricky Peters, who was a fugitive at the time of trial, to assist in the transfer of the gun. Defendant went upstairs to his office above the bar and brought the shotgun down in a paper bag, which he gave to Peters. They then walked across the street, where they were joined by the Government agents. Defendant returned inside, and, according to the agents, Peters said that he and defendant had discussed the price and wanted $50, rather than the $25 defendant had originally agreed upon. After some discussion about the price, the agents bought the gun.

At trial, defendant testified in his own behalf. He did not deny selling the two guns. Rather, he testified that while he was a gun collector, he was not a gun dealer, and he sold these guns only because he was entrapped by the Government agents.

In his testimony on direct examination, defendant presented himself as a decent, law-abiding citizen, who worked hard running his bar, and yet was harassed by the police. Understandably, the prosecutor wished to discredit defendant's "law-abiding citizen" self-portrait. The method he chose to accomplish this, however, was improper, and requires us to reverse defendant's conviction.

Apparently under the misapprehension that evidence of an arrest is admissible in evidence for the purpose of proving the conduct for which a person was arrested, the Government cross-examined defendant about three different arrests, two his and one his son's.

The general rule, consistently applied in this Circuit, is that normally the mere existence of an arrest is not admissible to impeach the defendant's credibility. *See United States v. Hodnett*, 537 F.2d 828,

829 (5th Cir. 1976); *United States v. Garcia*, 531 F.2d 1303, 1306 (5th Cir.), *cert. denied*, 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *Hurst v. United States*, 337 F.2d 678, 680–681 (5th Cir. 1964). *See generally* 3A Wigmore on Evidence § 980a (Chadbourn rev. 1970); Annot., 20 A.L.R.2d 1421 (1951). The rationale for this rule is simple. Under our constitutional scheme a defendant is presumed innocent until proven guilty, and therefore an arrest, without more, is quite consistent with innocence and yet its mention may prejudice the jury against defendant.

■ In his direct testimony defendant testified that he did not drink and, although occasionally he would have a social drink, he "gave that [drinking] up many, many years ago." On cross-examination, the prosecutor asked if defendant was arrested for driving under the influence in *1962*, some 15 years before trial. The judge asked the relevance of the inquiry, and the prosecutor replied that defendant said he was "such a solid citizen" who told the jury he did not drink. The judge said he would "let it in on that theory."

This driving under the influence arrest could not be used to either generally impeach defendant or to impeach defendant's specific statement that he did not drink. There are two reasons for this. First, since defendant was never convicted, the arrest does not show that defendant actually drank in 1962; all it shows is hearsay, that defendant was accused of drinking. Second, even if it could be considered as showing defendant drank, defendant did not say on direct that he had never taken a drink. He said he did not drink at the time of the trial in 1977, and that he had given up drinking many years prior to that. It was error to introduce this 1962 arrest evidence.

■ On direct, defendant stated he had permits for all his guns. The prosecutor asked defendant if he had been arrested in 1977 for carrying a concealed weapon. Since it was not a conviction but merely an arrest, on which defendant had not yet been tried, the evidence was inadmissible for the purpose of proving that he had carried a concealed weapon.

■ The prosecutor also asked defendant if his son had been arrested for possession of stolen guns. As to the relevance of this arrest, the prosecutor said that defendant and his son were observed counting money outside the bar after the sale of the revolver. There was no evidence that the money being counted was that received for the gun, nor any evidence connecting defendant's son to the alleged conspiracy. A conviction of defendant's son on that charge was irrelevant to any issue in this case, let alone a mere arrest. This was a highly prejudicial attempt to taint defendant's character through "guilt by association."

■ Several of the prosecutor's comments made during the trial and closing argument, whether intentional or inadvertent, could easily be construed as indicating that the prosecutor knew that defendant was involved in other criminal misconduct and that the prosecutor had knowledge of evidence not before the jury which showed defendant's guilt of the present crime. The cases consistently hold that such comments deprive a defendant of a fair trial.

■ After introducing evidence of two of defendant's prior convictions for carrying concealed weapons and saying that they involved two different guns in two separate incidents, and being informed that they involved two separate offenses related to the same gun, the prosecutor apologized, stating that "[i]f I told the Court anything wrong, *there have been so many occasions involving Mr. Labarbera I get them confused*." (emphasis added). Defense counsel objected and the court ordered the comment struck: "That's all right. I'll strike that. Let's go." The court's ruling, however, without any further instructions, was insufficient to remove the danger that the jury would understand the prosecutor's comment as indicating that defendant had been involved in many other brushes with the law.

When a dispute arose between defense counsel and the prosecutor as to who should explain the definition of "back pouring" liquor to the jury, and defense counsel suggested the prosecutor do so, the prosecutor replied

[T]he Government is not testifying. If he wants me to testify, *I'll be happy to take the stand and tell everything I know about this case.* (emphasis added).

While in context this may only refer to testifying about "back pouring," it is possible the prosecutor took this opportunity to convey to the jury that he had evidence of defendant's guilt which he was unable to present to them.

An additional ground of error asserted by defendant presents some difficulty on appeal. Indicted as a co-conspirator, Robert Smith had pled guilty before defendant's trial and then testified as a Government witness against defendant. In closing argument, the prosecutor told the jury that since Smith had pled guilty, Smith had "absolutely nothing to gain" by testifying against defendant, especially since no agreement between Smith and the Government had been made. A little more than a month after defendant was found guilty, however, the same prosecutor notified the judge that Smith wished to change his plea to not guilty, and that the Government supported the motion. The prosecutor informed the judge that the evidence in the Labarbera trial showed Smith was no more than a customer in the bar who agreed to pass the gun as a favor to defendant. The prosecutor also told the judge that while the government knew this at the time of the indictment, "[t]here was some question in the Government's mind as to whether or not the action on behalf of Mr. Smith did amount to a conspiracy as far as his conspiring with Mr. Labarbera to violate the law at that time." After defendant's trial, however, the prosecutor said he was "convinced . . . that [Smith] was not involved in any conspiracy with Mr. Labarbera." The court allowed the plea change and the Government dismissed the indictment against Smith.

Smith's testimony, therefore, came before the jury in a false light. Both Smith and the Government now know that he was innocent, rather than being an admitted member of the conspiracy with which defendant was charged. His contact with defendant thus could not now be properly offered to prove a conspiracy between Smith and defendant. Because of the other grounds for reversal, we need not decide the effect of the use of Smith's testimony at defendant's trial. The situation cannot repeat itself at a subsequent trial.

Contrary to defendant's argument, the evidence as to a conspiracy between defendant and co-indictee Ricky Peters, while similar, is not identical, so that he is not entitled to judgment of acquittal, even with the exclusion of Smith's testimony. The Government is not precluded on remand from trying defendant for conspiring with Peters.

■ A review of the record in this case reveals sufficient evidence to support the jury verdict, viewed in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Therefore defendant may be retried without being subjected to double jeopardy. *Burks v. United States*, —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

■ Defendant objected to some of the improper comments and improper impeachment, but failed to object to others. This deprived the trial judge of the opportunity to correct any errors in the first instance. We are thus required to review certain of these errors under the "plain error" standard of review. Whether any of the points herein discussed would alone require reversal need not be decided. Individual instances such as these have sometimes escaped reversal under the harmless error rule. The cumulative effect of the errors herein set forth convinces us, however, that the defendant did not receive the fair trial that he is entitled to under the law.

REVERSED AND REMANDED.