**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Guadalupe SINGLETERRY and
Juan Antonio Singleterry,
Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Juan Antonio SINGLETERRY,
Defendant-Appellant.**

**Nos. 80–1222, 80–1278.**

United States Court of Appeals,
Fifth Circuit.
Unit A

June 1, 1981.

---

Earlene Longoria, Court-appointed, Edinburg, Tex., for defendants-appellants.

Gustavo L. Acevedo, Charles S. Szekely, Jr., Asst. Public Defenders, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for Juan Antonio Singleterry.

Carl Walker, Jr., U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., John P. Smith, Asst. U.S. Atty., Brownsville, Tex., Robert A. Berg, Asst. U.S. Atty., Corpus Christi, Tex., for plaintiff-appellee.

Before BROWN, GEWIN * and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Jose Guadalupe Singleterry and Juan Antonio Singleterry, brothers, were convicted by a jury of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Alleging prosecutorial misconduct which abridged their right to a fair trial, they appeal their convictions (docket number 80–1222). A year earlier Juan Antonio Singleterry had been convicted of the same offense, sentenced to three years imprisonment (all but four months of which was suspended), and placed on probation. As a consequence of the second conviction, the earlier probation was revoked. The revocation is appealed on the basis that the second conviction is invalid (docket number 80–1278). The cases were consolidated for appeal. Finding the charge of prosecutorial misconduct supported by the record, and concluding that in this case a reversal is mandated, we reverse the convictions and vacate the probation revocation.

### Context Facts

On October 29, 1979, in the early evening hours, an eighteen wheeler driven by Jose Singleterry was stopped routinely at the

---

* Gewin, Circuit Judge, concurred in the above opinion before his death May 15, 1981.

United States Border Patrol permanent checkpoint seven miles south of Falfurrias, Texas. While questioning the driver, the border patrol agent observed a person in the sleeper compartment and detected the odor of marijuana. Jose Singleterry identified the passenger as his brother and as a citizen of the United States. The agent asked that the flap to the sleeper compartment be opened, at which time he saw Juan Antonio Singleterry and what appeared to be several green plastic trash bags. The agent directed the driver to pull into the secondary inspection area for further inspection. The tractor-trailer proceeded to pull over but then accelerated, re-entered the highway and proceeded north. The agent gave pursuit and, along with his supervisory agent, stopped the truck after a one-half mile chase. When the truck stopped Juan Singleterry was in the passenger seat and the sleeper compartment was empty; no green bags were found. Another agent, alerted to the truck as it pulled away from the checkpoint, saw green bags being thrown from the passenger side as the truck reached a point about 100 yards from the checkpoint. This agent retrieved the bags which were found to contain the 82 pounds of marijuana referred to in the indictment.

Juan Singleterry was sentenced to four years imprisonment followed by a special parole term of two years, to run consecutively with the sentence received on the earlier conviction. Jose Singleterry, who had no prior convictions, was sentenced to three years incarceration with a special parole term of four years.

Because of his earlier conviction Juan Singleterry did not testify. His counsel was concerned that if Juan Singleterry testified and the prior conviction was developed as impeaching material, the jury might return a "bad man" conviction. Jose Singleterry did testify, denying any knowledge of the marijuana. Toward the end of his direct testimony his counsel asked: "[H]ave you ever been convicted of a felony in this state or any other state?" The response was "No, sir." The prosecution insisted that the only purpose of this question

and answer was to bolster Jose Singleterry's character and that unless this testimony was stricken and the jury instructed to disregard it, the government would have "to address the situation." The prosecutor's method of addressing the situation, in cross-examination and in closing argument, grounds the charge of misconduct abridging the defendants' rights to a fair trial.

On cross-examination the following colloquy occurred between Assistant United States Attorney Robert Berg and Jose Singleterry:

BY MR. BERG:

Q. Mr. Singleterry, one of the last questions that your attorney asked you was whether or not you had been convicted in this state or any other state of a felony offense. Do you remember that?

A. Yes, sir.

Q. You remember what you told him?

A. Yes.

Q. What did you tell him?

A. No.

Q. All right. That would tend to bear upon your character, would it not?

A. I don't know what you mean.

Q. All right, let me ask you this: Even though you haven't been arrested in this state or any other state for a felony offense, which might mean that you are a good person, let me ask you this: Did you make a habit of associating with, being with and travelling with a person or persons who has not only been convicted of a felony in this state, but in this very courtroom?

At this point counsel for Juan Singleterry objected and, out of the jury's hearing, moved for a mistrial claiming that Berg was attempting to "lay before the jury the fact that my client is a prior convicted felon in this court." Defense counsel stated that the prosecutor had been informed that Juan Singleterry would not take the stand and, therefore, his character would not be put at issue. Counsel for Jose Singleterry made

no objection. The court denied the motion for mistrial. Juan Singleterry's counsel then objected to further questions along this line insisting that the inquiries could refer only to his client. This exchange followed:

MR. BERG: I haven't asked any names yet, Judge.

THE COURT: Well, don't do that.

MR. BERG: I am not going to.

Immediately thereafter the following questioning occurred:

Q. (By Mr. Berg) Mr. Singleterry, would you answer the question, please.

A. Would you please repeat, sir?

Q. Do you make a habit or do you associate—let me take the word habit out of it. You said that you haven't been arrested in this state or any other state for a felony offense.

A. Yes, sir.

Q. Do you associate with any person or persons who in fact have been arrested and convicted and imprisoned for a felony offense, not only in this state or any other state, but right in this very courtroom?

A. What do you mean by associate?

Q. What do I mean by associate?

A. Yes.

Q. Do you have dinner with them sometimes?

A. Yes.

Q. And do you go places with them sometimes?

A. Yes.

Q. Do you do that sort of thing frequently?

A. No.

Q. You don't do it frequently?

A. Just when occasion comes up.

Q. And you know that they are felons, is that right?

A. What do you mean by that?

Q. That they have been convicted and been to the penitentiary.

A. Well, you are referring to what person?

Q. Well, I'm not referring to any person in particular, unless you are thinking of somebody particularly, and be best if you didn't mention who you are thinking of, but do you do it on a regular basis?

MR. ACEVEDO [counsel for Juan Singleterry]: Your Honor, here again—

A. I love that person—

THE COURT: Just a minute.

A. —with all my heart. That's why I associate with him.

Q. (By Mr. Berg) All right, without making any—

THE COURT: Just a minute.

MR. ACEVEDO: Your Honor please.

THE COURT: Just a minute.

MR. ACEVEDO: We would like to object again to this line of questioning. The U.S. Attorney knows perfectly well in which direction he is leading the witness.

MR. BERG: I have no further questions along this line, Your Honor.

Following this exchange the court inquired whether counsel for Jose Singleterry joined in the objection; counsel stated that he did not. A few questions later, while asking Jose Singleterry about his brother Juan being at his home and requesting transportation, Berg asked:

Q. But I mean just as a simple matter of curiosity, you wouldn't say, "Well, how in the world did you get here?" You wouldn't do that as a simple matter—I mean for a brother that you loved—

To complete the matter, in his closing argument to the jury Berg further addressed the situation with these comments:

Now, Mr. Guadalupe Singleterry takes the stand and he wants to impress upon you what an honest, good citizen he is, because his lawyer asked him, and this is the only relevance of something like this, is to bolster his credibility and character before this jury, there is no other relevance to say, "No, I have never been convicted of a felony in this state or any other state. I am Mr. Nice Guy."

Well, if his character is all that good that he wants to get up here and boast to the jury that he has never been convicted of a felony in this state or any other state, what in the world is he doing running around with people that have been convicted of a felony not just in this state, but in this very courtroom?

Counsel for Juan Singleterry contemporaneously objected; counsel for Jose Singleterry did not. Absent timely objections to the questions on cross-examination and the comments in closing argument, there is no appellate review unless the errors assigned constitute plain error affecting substantial rights. Rule 52(b), Fed.R.Crim.P.;[1] *United States v. Okenfuss*, 632 F.2d 483 (5th Cir. 1980); *United States v. Veytia-Bravo*, 603 F.2d 1187 (5th Cir. 1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980). We find that the errors assigned constitute plain error.

### Guilt by Association

■ The prosecutor characterized Jose Singleterry's statement that he had no prior felony convictions as evidence of his character which entitled the government "to address the situation." We express no opinion on the correctness of this characterization, for that issue is irrelevant. What is relevant is the long established rule that a defendant's guilt may not be proven by showing he associates with unsavory characters. In *United States v. Forrest*, 620 F.2d 446, 451 (5th Cir. 1980), we stated: "That one is married to, associated with, or in the company of a criminal does not support the inference that that person is a criminal or shares the criminal's guilty knowledge." *See United States v. Longorio*, 569 F.2d 422 (5th Cir. 1978); *United States v. Henderson*, 524 F.2d 489 (5th Cir. 1975); *United States v. Martinez*, 486 F.2d 15 (5th Cir. 1973). We have held that ad-

mission of evidence of bad conduct of relatives or friends is error. In *United States v. Labarbera*, 581 F.2d 107 (5th Cir. 1978), we held improper the cross-examination of a defendant, charged with a gun law violation, concerning the arrest of his son for a similar offense, stating: "A conviction of defendant's son on that charge was irrelevant to any issue in this case, let alone a mere arrest. This was a highly prejudicial attempt to taint defendant's character through 'guilt by association.'" *Id.* at 109. In *United States v. Ochoa*, 609 F.2d 198 (5th Cir. 1980), we reiterated that cross-examination of a defendant may not extend to questions about convictions of close associates and relatives. Our practice in this regard is consistent with that followed in other circuits. *Id.* at 205 n.3.

■ Assuming *per arguendo* that the denial of a prior felony conviction constitutes an offering of character evidence, under Rule 404(a)(1)[2] of the Federal Rules of Evidence and our prior decisions, the government would be restricted to proper refutation evidence. Questions relating to convictions of associates or relatives, in this context, are not admissible.

Finally, the questions and remarks objected to may not be justified as proper impeachment. Jose Singleterry put his credibility at issue when he took the stand and he subjected himself to impeachment by the modes and methods prescribed by rules and precedent. He could be impeached for denying any prior felony conviction only if the denial was shown to be untrue. His association with a convicted felon is not a refutation of his statement and is not a basis for impeachment. *United States v. Vigo*, 435 F.2d 1347 (5th Cir.), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971).

---

1. Fed.R.Crim.P. 52(b) provides:

   Plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

2. Fed.R.Evid. 404(a)(1) provides:

   (a) Character evidence generally.—Evidence of a person's character or a trait of his charac-

ter is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

   (1) Character of accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same. . . .

## Prior Conviction of Juan Singleterry

■ A year prior to trial of the case *sub judice* Juan Singleterry was tried and convicted, in the same courtroom, of possession of marijuana with intent to distribute. Berg's questions about association with a person convicted in that very same courtroom was a thinly veiled reference to Juan Singleterry. Even this gossamer thin veil was ripped aside by Berg's persistent questioning leading to Jose Singleterry's response that he loved the person involved, and Berg's subsequent reference to "a brother that you loved."

Berg informed the jury of the prior conviction of Juan Singleterry by his method of addressing the situation occasioned by Jose Singleterry's truthful statement that he had never been convicted of a felony. Evidence of prior convictions has long been the object of careful scrutiny and use because of the inherent danger that "juries may convict a defendant because he is a 'bad man' rather than because evidence of the crime of which he is charged has proved him guilty." *United States v. Avarello*, 592 F.2d 1339, 1346 (5th Cir. 1979). Evidence of prior convictions is admissible under Rule 404(b)[3] or 609(a)[4] of the Federal Rules of Evidence, neither of which applies in the case before us.

## Prosecutorial Misconduct

Berg intentionally and purposefully questioned Jose Singleterry in the improper manner discussed and exacerbated the error by making the improper statements in closing argument. Berg's trial tactics have formed the basis for at least three recent appeals to this court. In *United States v. Handly*, 591 F.2d 1125, 1132 (5th Cir. 1979), we affirmed the conviction but issued a warning about his opening remarks and closing argument:

> We note once again, however, that "[c]ounsel's improper statements in summation is a continuing problem in this Court in civil and criminal jury trials." *United States v. Morris* [5 Cir.], 568 F.2d [396] at 401. In *Morris*, we pointed out that this Court has repeatedly held that "an attorney may not inject into his argument any extrinsic or prejudicial matter that has no basis in the evidence," including his own opinion concerning the merits of the case or the credibility of witnesses. 568 F.2d at 401. We went to great lengths in *Morris* to explain what was proper and improper and why. 568 F.2d at 400–03. Yet, once again, we must express our dismay that attorneys would make statements such as those in this case despite the Court's repeated disapproval. 568 F.2d at 402. While recognizing that this appellant's rights were not prejudicially affected, we remind prosecutors that improper statement such as these will subject their cases to severe scrutiny and could result in reversals of hard-won convictions. *See United States v. Corona*, 5th Cir., 551 F.2d 1386, 1388–91.

We then reversed the conviction in *United States v. Garza*, 608 F.2d 659 (5th Cir. 1979), for improper closing argument. We followed with another admonition in *United States v. Okenfuss*, 632 F.2d 483 (5th Cir. 1980), in which we found Berg's conduct improper and unprofessional and we alluded to sanctions for disciplining counsel. We affirmed the conviction in *Okenfuss* for lack of a timely objection and because the conduct was not found to be plain error. Nonetheless, our message should have been

---

**3.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**4.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

clear indeed to any counsel disposed to heed. We shall issue no further warnings. To appear as counsel in federal court is a privilege which may be forfeited.

The challenged questioning and closing argument tainted the trial of Jose Singleterry because of the spectre of guilt by association. Such tainted the trial of Juan Singleterry because it placed before the jury the clear inference that he had a prior conviction.

The convictions of Jose Guadalupe Singleterry and Juan Antonio Singleterry are REVERSED. The revocation of probation of Juan Antonio Singleterry is VACATED.