UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Valadez ROMO,
Defendant-Appellant.

No. 81–2082.

United States Court of Appeals,
Fifth Circuit.

March 3, 1982.

L. Aron Pena, Edinburg, Tex., for defendant-appellant.

James R. Gough, John M. Potter, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, RUBIN and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Romo was charged and convicted of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846 and § 841(a)(1), and two counts of possession of cocaine, 21 U.S.C. § 841(a)(1). On appeal, Romo argues that the trial court committed reversible error by: (1) allowing into evidence testimony of extraneous convictions of third parties known only as Romo's acquaintances; (2) denying Romo's motion to suppress evidence obtained with-

out a warrant by police and seized from a compartment in Romo's vehicle that was in the exclusive custody of the arresting officers; (3) instructing the jury in the court's final charge that Romo was an interested party whose testimony was to be viewed in the light of his interest in the outcome; and (4) not instructing the jury in its charge that a convicted accomplice witness was impeached by other prior felony convictions and that his testimony must, therefore, be weighed with great care and caution.

We find that the trial judge failed to cure the highly prejudicial cross-examination that extended to questions about convictions of one of Romo's associates, and "guilty association" testimony presented by the government as part of its case, and we reverse Romo's conviction. We affirm the court below with respect to the other issues raised.

*Facts*

In the light most favorable to the jury verdict, the relevant facts are: Convicted accomplice Carlson had arranged a drug transaction whereby Carlson was going to supply Gomez (a government agent) with eight ounces of cocaine that Carlson was to get from Romo. Carlson was arrested with eight ounces of cocaine, and he told the arresting agents that Romo was his source, and that he was to return to Carlson's home later that evening to collect the money for the cocaine that Carlson was to sell to Gomez. Agents then went back to Carlson's home and found Romo waiting in his van, which was parked in front of Carlson's house. Romo was arrested and his van was seized and transported to the McAllen, Texas DEA office where it was searched. A bag containing less than one-half ounce of cocaine was found in a container attached to the van's seat. No warrants for arrest or search were obtained. Romo was charged in three counts of a five count indictment for conspiracy to possess and possession with intent to distribute cocaine.

At trial, four events occurred that Romo now argues constitute reversible error:

1. During the government's cross-examination of Romo, it attempted to show that two of Romo's acquaintances—Saldana and Rios—were the sources of Romo's supply of cocaine. Romo was asked whether he knew that these acquaintances had been convicted of various drug-related offenses. He replied that he had no knowledge of these convictions. Romo did not object to this line of questioning, but when, on rebuttal direct examination, the government called an undercover agent to testify about the acquaintances' drug records, Romo objected, and the trial court overruled the objection. Shortly afterward, the court directed the jury to ignore any testimony concerning the conviction of Rios only.

2. The trial court denied Romo's motion to suppress the cocaine found in Romo's van on the basis that a warrantless search was conducted while the van was in the custody of the police.

3. The trial judge originally instructed the jury: "You have a right to consider for a fact the defendant's testimony if he is an interested party in this case and he is vitally interested in the outcome of it."

After an objection by Romo, the judge stated: "A defendant's testimony is to be judged the same as any other witness. By that I mean that defendant is to be judged as any other witness, and you have a right to consider as to him as any other witness, the interest that a witness may have in testifying."

4. The judge gave an instruction about the general credibility of witnesses, the sense of which was that any conviction of any witness could be taken into consideration in deciding the weight to be accorded to that witness's testimony. Romo wanted a specific instruction with respect to Carlson's convictions.

We will discuss these contentions in turn.

*Guilt by Association*

■ The government argues that Romo's objection to the testimony concerning Saldana's and Rios's convictions was untimely because Romo answered questions on cross-examination concerning his knowledge of these convictions without objection, and only objected when the government introduced the testimony as part of its case.

The case that the government cites to support the proposition that the objection was untimely is our decision in *United States v. Edwards*, 458 F.2d 875, 884 (5th Cir.), *cert. denied*, 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148 (1972). In *Edwards*, we held that the defendant waived an objection to prejudicial testimony concerning his commission of allegedly unrelated criminal acts when that testimony was offered without objection for an extended period of time, and the defendant actually engaged in full cross-examination of the witness focusing on the objectionable testimony. *See* 458 F.2d at 884.

■ *Edwards* is distinguishable from the present case for three reasons. First, there was some discussion in *Edwards* that suggested that the questioned testimony might have been admissible anyway to show specific intent to further the aim of the conspiracy with which the defendant was charged. Second, the *Edwards* defendant actually stated at one point that he had no objection to the testimony. Third, in the present case, Romo simply denied that he knew about his acquaintances' convictions; he said nothing more. As soon as the government attempted to introduce independent evidence of the convictions, Romo properly objected, and Romo's minimal cross-examination of the witness could not amount to a waiver when the trial judge overruled Romo's objection to exclude the testimony in the first instance.

■ This court has a "long-established rule that a defendant's guilt may not be proven by showing that he associates with unsavory characters." *United States v. Singleterry*, 646 F.2d 1014, 1018 (5th Cir. 1981). "That one is married to, associated with, or in the company of a criminal does not support the inference that the person is a criminal or shares in the criminal's guilty

knowledge." *United States v. Forrest*, 620 F.2d 446, 451 (5th Cir. 1980) (footnotes omitted). In *Singleterry*, an attempt to show guilt by association was held to be "plain error."[1] *Singleterry, supra*, 646 F.2d at 1018. Cross-examination of a defendant may not extend to questions about convictions of relatives and associates. *United States v. Ochoa*, 609 F.2d 198, 204–06 (5th Cir. 1980).

■ We have no doubt that the government's attempt to introduce the drug related convictions of Rios and Saldana on cross-examination, and then by direct testimony on the government's rebuttal, "was a highly prejudicial attempt to taint defendant's character through 'guilt by association'." *United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir. 1978).

The defendant Romo testified in his own behalf. He denied guilt of any charge. The substance of his testimony was to explain his dealings with Carlson as growing out of a land sale. A thrust of the testimony of Romo and his wife[2] was that they were law-abiding and civic-minded people with an approximate annual income of $40,000 between the two of them, good parents of three children, and without any criminal activity in their background.

Romo's innocent explanation (land transaction) of his contact with Carlson contradicted Carlson's version that he and Romo were involved in a criminal transaction concerning the sale of cocaine. The government's "guilt by association" testimony was highly prejudicial to this defense. Rios cashed a $4,000 check for Romo that Romo claimed was given to him by Carlson for a land sale (and the check was marked "downpayment on property"); Saldana merely had a number of phone conversations with Romo and the subject of these

---

1. Even absent a timely objection, Fed.R.Crim.P. 52(b) provides that "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

2. Romo's wife was called by the government to testify that she did not know that her husband had received the $4,000 check from Carlson for

the sale of the real property that they owned. This check, which Romo cashed with Rios, was subsequently dishonored for insufficient funds. Romo testified that his visits to Carlson on the night of the arrest were for the purpose of collecting on the check that Carlson had drawn.

calls was not even in evidence. That Rios and Saldana, two persons with whom the defendant had some contact (cashing a check, telephone calls), had previously been convicted of drug-related offenses, is irrelevant to whether Romo and Carlson were engaged in a conspiracy to possess and distribute cocaine *unless* "guilt by association" testimony is competent to prove guilt of the substantive offenses; and, as previously noted, it is *not*. Thus, the effect of this inadmissible testimony was to cast doubt on Romo's sworn version of his Carlson association simply because he associated with drug dealers and thus, inferentially, was himself a drug dealer.

The government presents three arguments to attempt to militate the serious problems presented by admission of this testimony.

First, the government argues that the testimony was admissible to challenge Romo's testimony, under cross-examination, that Rios was a businessman and Saldana was a loan businessman (although Romo had not even mentioned Saldana until asked about him during cross-examination), as designed to enhance his own image as an honest businessman and to indicate that the check was "business related" (in accordance with his defense), instead of "dope related" (as contended by the government's case).[3] Romo denied the cocaine transaction and argued that the sale involved was for land. The government sought to show that Romo was involved in selling cocaine to Carlson, and it introduced evidence of the convictions in order to show that Romo's acquaintances, who were not even involved in this trial, had been convicted of drug offenses in the past, were thus possibly involved in drug transactions again, and were supplying Romo with drugs. The govern-

ment sought to establish Romo's guilt as an inference from the criminal activities of his acquaintances. We fail to see how any of this is more than a prohibited attempt to taint Romo through "guilt by association."

■ Second, the government argues that the court's instruction to the jury to ignore Rios's conviction was completely curative. The government cites as support for the proposition that proper instructions may cure error, *United States v. Klein*, 546 F.2d 1259, 1263 (5th Cir. 1977); *United States v. Works*, 526 F.2d 940, 946–47 (5th Cir. 1976); *United States v. Smith*, 517 F.2d 710, 711 (5th Cir. 1975). Two of these cases—*Klein* and *Smith*—did not involve "guilty association" testimony, and we held the errors therein to be curable by instruction. *Works* did involve "guilt by association" testimony and, although we emphasized that the testimony was inadmissible, the error was not reversible because it was harmless beyond a reasonable doubt, and because the trial court gave an immediate curative instruction, 526 F.2d at 946–47.

We express some doubt as to whether the "guilt by association" cross-examination and direct testimony in the present case were curable by instructions at all, given our strongly expressed disapproval of such evidence in *Singleterry, supra*, 646 F.2d at 1018, and given the sworn defense raised in this case (the innocent businessman without prior criminal record) and the cumulative prejudice resulting from injections into the case of the defendant's association with *two* persons of drug-related background. In the present case however, *no instruction whatsoever* was given by the trial court with respect to Saldana's conviction. The result in this case is then dictated by our decision in *Singleterry*: admission of such highly

---

3. Romo had received a check from Carlson that Carlson claimed was to pay Romo for cocaine that he had supplied previously to a third party. Romo argued that the check was intended as payment for a "land transaction." Romo cashed the check with Rios, whom Romo characterized as a "broker" or "importer." Proving Rios's conviction, according to the government, was permissible to show that Rios was not a legitimate business man.

With respect to Saldana, the government's argument is even more attenuated. Romo had not even mentioned Saldana except to deny a question by the government about whether Saldana was the source of Romo's supply of cocaine. To justify its use of Saldana's conviction, the government points to a number of telephone calls that took place between Romo and Saldana before Romo's arrest.

prejudicial evidence in the absence of any curative instruction amounts to reversible error.[4]

■ The third argument that the government presents is that even though the trial court failed to instruct the jury to disregard any testimony or comment concerning Saldana's conviction, the error is harmless because the evidence against Romo was overwhelming. We are not convinced by this argument because unlike *Works, supra*, 526 F.2d at 946–47, where the evidence "overwhelmingly establishe[d]" the defendant's guilt, the determination of Romo's guilt in the present case essentially depended upon the jury's acceptance of the otherwise uncorroborated testimony of accomplice and coconspirator Carlson as to what had transpired in meetings between the two.[5] Carlson was arrested immediately before Romo, and told the DEA agents that Romo was the source of his supply of cocaine. The

cocaine that Carlson had at the time of his arrest was determined to be of 34% purity, and the cocaine found in Romo's van was of 44% purity. Although the government claims that the cocaine probably came from the same source, it essentially relied on Carlson's testimony about Romo's role in this transaction, and we cannot conclude that the evidence against Romo was "overwhelming" in the sense in which we did so conclude in *Works*.[6]

### The Search Issue

■ Romo contends that the trial court erred in denying his motion to suppress evidence seized from his vehicle without a warrant, and while the vehicle was in the custody of arresting officers. We find no merit to this contention. There was probable cause to stop and search the vehicle at the place where Romo was arrested; that

4. We recognize, of course, that a curative instruction was given with respect to Rios, and that Rios played a more important role in the case in that Romo claimed that Rios cashed the check that Carlson had given to Romo. Nevertheless, even assuming that somehow the curative instruction could erase from the jury's mind the defendant Romo's association with the drug-convicted Rios, the additional cumulative effect of the testimony as to the criminal background of Saldana (who received telephone calls from Romo during the period of the purported conspiracy) cannot easily be perceived as harmless, in the absence of additional cautionary instructions (if indeed curable at all under the facts of the case).

5. There was other evidence in this case upon which the government relied. This evidence included Romo's several visits to Carlson's house on the night of the arrests, Romo's acknowledgement that he did not contact any lawyer to draw up conveyancing papers with respect to the "land transaction," Romo's wife's ignorance of the existence of any such "land transaction," and the existence of eleven grams of cocaine found in Romo's van. Nevertheless, any inference that the jury drew with respect to Romo's participation in the scheme to supply the eight ounces of cocaine essentially depended on its believing the version of this story told by Carlson, recounting conversations and transactions at which only Carlson and the defendant Romo were present. The government's witnesses as to their surveillance of the movements of Carlson and Romo were indeed corroborative of the objective manifestations of Carlson's version of the private dealings be-

tween the two. In the ultimate analysis, however, the evidence as to what occurred between Carlson and Romo at their private meetings depended upon whether the jury believed one or the other.

6. For similar reasons, the "guilt by association" testimony was likewise not harmless as to Romo's conviction of Count III, based on his alleged possession of the 11 grams of cocaine found behind the seat of his van, when (after Romo's arrest) his van was searched outside of his presence after it was brought to the police parking lot. Romo's sworn testimony denied his guilt of this charge, and the government made no effort to cross-examine him as to his denial of the Count III 11-gram possession charge. For the government's case as to this charge, it produced only the testimony of the two agents present at the search who testified that they discovered the substance. Considering the presumption of innocence and Romo's sworn denial of guilt, it was reasonably open to the jury to believe that the cocaine was in his vehicle without his knowledge. As the district court noted in his charge to the jury, Romo's lawyer had "raised the inference under the evidence that apparently it [the cocaine] was placed there by somebody else"—an inference that might be plausible under Romo's innocent-businessman defense, but one much less likely to be so, if indeed his associates at the time of his alleged drug-involvement were those who themselves had drug-related convictions in their background.

probable cause still existed at the DEA lot where the vehicle was actually searched immediately after being brought there by DEA agents. *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Romo argues that because the search was not contemporaneous with his arrest, it was not a search sanctioned by the Supreme Court in its recent decision in *New York v. Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Romo apparently understands *Belton* to hold that warrantless automobile searches are only permitted if they occur contemporaneously with a lawful custodial arrest of the occupants of the automobile. We do not agree with this reading of *Belton*; the Supreme Court in *Belton* did not explicitly consider whether the search involved therein was or was not permissible under the "automobile exception" developed in *Texas v. White* and *Chambers v. Maroney, supra*. Rather, *Belton* held that the examination of the pockets of a zipped jacket found in the passenger compartment of an automobile may be searched as an incident to a lawful custodial arrest of the occupants of the automobile under the "search incident to a lawful arrest" exception of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *Belton* extended the searches permissible under *Chimel*; it did not restrict the searches permissible under *Texas v. White* and *Chambers v. Maroney, supra*.

*Remaining Issues*

Romo's final two contentions are without merit. First, Romo claims that the court erred in instructing the jury about evaluating his testimony as that of an interested party. The judge gave a corrective instruction, and there is no error.

Second, Romo argues that the court erred by not instructing the jury specifically on Carlson's past convictions, and instead instructing on past convictions of witnesses generally. Romo's requested instruction need not be given *in haec verba*, as long as a cautionary instruction was given. *U.S. v. Corcione*, 592 F.2d 111, 117 (2d Cir.), *cert. denied*, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248; 440 U.S. 975, 99 S.Ct. 1545, 59 L.Ed.2d 794 (1979).

*Conclusion*

Because the trial court erroneously admitted cross-examination and direct testimony based on "guilt by association" and did not give a curative instruction, we REVERSE Romo's conviction. We AFFIRM the district court insofar as the search issue and instruction issues are concerned. We REMAND the case for further proceedings consistent with this opinion.

AFFIRMED in part, and REVERSED in part, and REMANDED.