IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 4, 2007

Charles R. Fulbruge III
Clerk

No. 06-51120

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JUAN ANGEL PANDO FRANCO

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:06-CR-83

Before DENNIS and PRADO, Circuit Judges, and ENGELHARDT, District
Judge.[*]

DENNIS, Circuit Judge:

Juan Angel Pando Franco appeals his conviction for aiding and abetting
the possession with intent to distribute and the importation of less than 50
kilograms of marijuana into the United States. He argues that there is
insufficient evidence to support the jury's verdict, that the district court erred
in denying a motion for a mistrial based on an alleged prejudicial prosecutorial
question, and that his Fifth Amendment privilege against self-incrimination was

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

violated when the Government referenced his post-arrest, pre-Miranda silence at trial. For the reasons stated herein, we affirm his conviction.

## I. BACKGROUND FACTS

On March 26, 2006, Juan Angel Pando Franco ("Pando") attempted to enter the United States at the Presidio, Texas, Port of Entry from Mexico. He was driving a Ford passenger van. He was referred to a secondary inspection area for further inspection because he was transporting three additional passengers and pulling a trailer. While he and his passengers were undergoing passport examination and identification, Officers Alfredo Huerta and Ralph Gonzales inspected the van, the trailer, and their contents. Inside the trailer, they saw a wooden table, which they described as "being cheaply made out of plywood, with glue and nails coming out of it on the edge," and having edges that were "lumpier" than the rest of the table. They said that the table was shoddily made, "not the kind of table one would entertain guests on," with edges that appeared crooked, not flush, and overly heavy. A drug dog did not alert when walked around the table. Using a density meter, however, Officer Gonzales discovered that the table had an abnormally high reading around its edges. The officers drilled a hole into a corner of the table and discovered 17.4 kilograms of marijuana inside. After Pando claimed ownership of the table, he was handcuffed and taken to a holding area. He was described as being "calm, cooperative and quiet. He didn't say anything."

Two hours later, Pando was removed from the holding area and Mirandized. After signing a written waiver of his Miranda rights, Pando was interviewed. He told the officers that he and his son were in the business of transporting people and goods between Oklahoma and Julimes, Chihuahua, Mexico. Joining him on this particular trip were his nephew, Jose Ruiz, and two passengers. He stated that it cost him $200 to $250 to fuel up one way, but that Pando usually charges $100 per person and $50 per child. The officers pointed

out that this particular trip was not cost-beneficial because Pando was only transporting two individuals. Pando explained, however, that he needed to return to Oklahoma regardless and that he usually makes up the difference by importing goods. Without any prompting from the officers, Pando then stated, "that's where my mistake is, specifically agreeing to transport that table." He told the officers that he was supposed to deliver the table to a young man in Oklahoma City, but that he did not know the man. In his wallet, he had a piece of paper that he removed from the table that contained the man's name, address, and phone number. When asked why he removed the paper from the table, he first explained that the paper would help him find the person for whom he was importing, but later retracted that statement and said he removed the paper "to facilitate its importation through the port of entry."

Pando explained that he was initially contacted via cell phone about shipping the table, that it was dropped off at his mother's house, and that he was paid $40 to transport it. He stated that he usually does not ship things for strangers, but he liked this man's voice and felt comfortable with him. The man told Pando that the table was a gift for a friend. Pando stated that although he always examines items before delivery, he did not examine the table. He noted, however, that he found the table overly heavy and that it took both him and his nephew to load it into the trailer.

The officers found it unusual that not once during the course of his detention did Pando ever ask why he was being handcuffed, detained, and interviewed. Also, he never once asked if there was a problem with the table. Upon inquiring about his silence, Pando responded that the "table must contain drugs." When asked by the officers what type of drugs, he responded, "cocaine."

At trial, during its case in chief, the Government made several references to and elicited testimony regarding Pando's post-arrest, pre- and post-Miranda

silence. Pando objected to the admission of this testimony, but after a brief sidebar, the district court overruled the objection.

Pando's nephew, son, and daughter each testified in his defense. His nephew, who rode with Pando on this particular trip, testified that although the table appeared exotic and heavy, it was not otherwise strange and appeared to be made from heavy wood. He further testified that, although he and his uncle usually examine items prior to transportation, they did not examine the table because it looked plain and they did not want to break it. Pando's son and co-owner of their transportation company testified that he was aware that there were two other companies in Oklahoma offering to transport goods and passengers to and from Mexico. When asked by the Government if he was "aware that some of these companies, in the same business, have also been charged with transporting drugs," an objection was sustained and the jury was instructed to disregard the question. A motion for mistrial based on this question was overruled. Finally, Pando's daughter testified that Pando has a good reputation in the community for being a peaceful, law-abiding citizen and for truth-telling. She further testified that Pando had never been arrested before and has been married for 34 years.

Pando testified in his own defense. He said that he was surprised when the officers found marijuana in the table, but that he suspected that there was a problem with the table because he knew what was in the other items in the trailer. When asked why he did not inquire about why he was being handcuffed, he replied that he did ask and was told that he was being "arrested." He denied ever telling the officers that the table was overly heavy, but he admitted telling them that it took two people to load it into the trailer. He also denied ever telling the officers that he had taken the piece of paper off the table in order to facilitate its entry into the United States.

During closing argument, the prosecuting attorney again referenced Pando's post-arrest, pre- and post-Miranda silence:

> If somebody goes to handcuff you, what is going to be your reaction? If you've got guilty knowledge, if you know you're committing an offense that's illegal, maybe it wouldn't bother you at all. . . . Why do you think he sat there very calmly and stayed quiet? Ladies and gentlemen, he knew exactly why he was being detained. He knew, whether it was marijuana or cocaine or heroin or stolen jewelry, whatever it was, it was in that table.

Pando objected to this line of argument, but the objection was overruled. He was ultimately found guilty of aiding and abetting the importation of less than 50 kilograms of marijuana into the United States and aiding and abetting the possession with intent to distribute less than 50 kilograms of marijuana. He was sentenced to 27 months imprisonment and three years of supervised release. This appeal followed.

## II. STANDARD OF REVIEW

Because Pando moved for judgment of acquittal at the close of the Government's case and at the close of the evidence, he properly preserved his sufficiency of the evidence challenge, which this court reviews de novo. See United States v. Izydore, 167 F.3d 213, 219 (5th Cir. 1999). This court reviews the district court's refusal to grant a mistrial by for an abuse of discretion. See United States v. Moreno, 185 F.3d 465, 472 (5th Cir. 1999). Finally, the issue of whether the references to Pando's post-arrest, pre- and post- Miranda silence violated his Fifth Amendment privilege against self-incrimination is a constitutional question of law, which this court reviews de novo. See United States v. Valles, 484 F.3d 745, 758 (5th Cir. 2007). If a constitutional violation occurred, the next question is whether the error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 26 (1967).

## III.  ANALYSIS

### A.  Sufficiency of the Evidence

This court must affirm a conviction if the evidence, viewed in the light most favorable to the verdict, with all reasonable inferences and credibility choices made in support of it, is such that a trier of fact reasonably could have found the essential elements of the crime beyond a reasonable doubt.  United States v. Ramirez, 954 F.2d 1035, 1039 (5th Cir. 1992).  Our inquiry is whether the jury reasonably could have made that decision based upon the evidence of record, not whether we believe that the verdict was correct.  United States v. Jaramillo, 42 F.3d 920, 923 (5th Cir. 1995).

To prove possession of marijuana with the intent to distribute, the Government must establish:  (1) knowing; (2) possession of marijuana; (3) with the intent to distribute it.  United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996).  To prove importation of marijuana, "the Government must establish that the defendant knowingly played a role in bringing the marijuana into the country."  Id.  Finally, to prove the crime of aiding and abetting, the Government must establish that the substantive offense occurred and that the defendant (1) associated with the criminal venture; (2) purposefully participated in the crime; and (3) sought by his actions for it to succeed.  United States v. Garcia, 242 F.3d 593, 596 (5th Cir. 2001).  "Associate" means that the defendant shares in the principal's criminal intent.  Jaramillo, 42 F.3d at 923.  "Participate" means that the defendant engages in some affirmative conduct designed to aid the venture or assist the perpetrator of the crime.  Id.  Each offense requires some showing of guilty knowledge.  Lopez, 74 F.3d at 577; Garcia, 242 F.3d at 596.

"The knowledge element for possession or importation of drugs can rarely be proven by direct evidence."  Lopez, 74 F.3d at 577.  Although knowledge can be inferred solely from a vehicle containing the contraband, "when the

contraband is hidden the Government must produce additional indicia that the defendant was aware of the presence of drugs." Id. at 577-78. Thus, circumstantial evidence is often used to establish the knowledge element for possession or importation of drugs.

Even if we exclude the references to Pando's post-arrest, pre- and post-Miranda silence, the Government has offered sufficient circumstantial evidence to support the verdict in this case. First, Pando did not seem overly surprised or bothered by his detention and, without prompting, affirmatively stated to the officers that "the table must contain drugs." Second, as the officers testified at trial, the table's shoddy construction and heavy weight were highly suspect. Third, Pando gave conflicting statements about why he removed the piece of paper from the table, at one point stating that it was to facilitate its entrance into the United States. Finally, the jury could have easily found his story implausible that although he never transports goods for strangers and always inspects goods prior to transportation, he failed to do so on this one particular occasion when the item being transported contained drugs. Upon reviewing this evidence, it is important to note that the sole inquiry is not whether the jury's verdict was ultimately correct but whether the jury made a reasonable decision based upon the evidence introduced at trial. Jaramillo, 42 F.3d at 923. We conclude that the circumstantial evidence in this case is sufficient to support the jury's verdict.

## B. Motion for New Trial

During trial, the Government asked Pando's son whether he was aware that other similar transporting companies in his area had been charged with transporting drugs. The district court sustained an objection and instructed the jury to disregard the question. Pando's motion for a mistrial was denied. On appeal, he argues that the district court abused its discretion.

"A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." United States v. Lowenberg, 853 F.2d 295, 302 (5th Cir. 1988). Instead, Pando must establish that the comment substantially affected the jury's verdict. United States v. Freeman, 434 F.3d 369, 375 (5th Cir. 2005). To make this showing, the court focuses on three factors: (1) the magnitude of the prejudicial effect of the statement; (2) the efficacy of any cautionary instruction; and (3) the strength of the evidence of the defendant's guilt. Lowenberg, 853 F.2d at 302.

With respect to the first factor, Pando is correct that evidence of guilt by association is extremely prejudicial. However, a prosecutor's question does not constitute evidence. United States v. O'Banion, 943 F.2d 1422, 1431 (5th Cir. 1991). In fact, all of the cases cited by Pando involved the actual presentation and admission of evidence by the court at trial. See, e.g., United States v. McConnell, 988 F.2d 530 (5th Cir. 1993) (evidence admitted regarding the criminal conduct of co-conspirators); United States v. Romo, 669 F.2d 285 (5th Cir. 1982) (evidence admitted regarding criminal conduct of defendant's acquaintances) United States v. Singleberry, 646 F.2d 1014 (5th Cir. 1981) (evidence admitted regarding criminal conduct of co-defendant); United States v. Labarbera, 581 F.2d 107 (5th Cir. 1978) (evidence admitted regarding defendant's son's arrest for driving while intoxicated). Moreover, Pando's son never answered the question and the statement was immediately followed with a curative instruction. Thus, the prejudicial effect was attenuated. See United States v. Freeman, 434 F.3d 369, 375 (5th Cir. 2005). With respect to the second factor, an instruction to disregard is generally deemed sufficient, "unless the remark is so highly prejudicial that it is incurable by the court's admonition." United States v. Irwin, 661 F.2d 1063, 1071 (5th Cir. 1981). Pando has not shown that the prosecutor's statement was so prejudicial as to render the curative instruction ineffective in this case. With respect to the final factor,

there was sufficient validly admitted evidence to support the jury's verdict notwithstanding the objectionable question. Thus, all three factors weigh in the Government's favor. Given the attenuated prejudicial effect of the statement at issue, the efficacy of the subsequent curative instruction, and the strength of the evidence in this case, we conclude that the district court did not abuse its discretion in denying the motion for a mistrial.

## C. Fifth Amendment and Waiver

As noted above, the Government, at trial, made several references to and elicited testimony regarding Pando's post-arrest, pre- and post-Miranda silence. Interestingly, the parties focus solely on the Government's references to Pando's post-arrest, pre-Miranda silence. This court has refrained from addressing the issue of whether references to a defendant's post-arrest, pre-Miranda silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. See United States v. Salinas, 480 F.3d 750 (5th Cir. 2007) (refusing to address issue because defendant did not preserve it and could not overcome harmless error review).[1] However, our review of the record reveals that the Government in this case referenced not only Pando's post-arrest, pre-Miranda silence but also his post-arrest, post-Miranda silence. Indeed, in the Government's case-in-chief, one of the officers testified: "We pointed out to Mr.

---

[1] The issue has also split the circuit courts. The Ninth, Tenth, and D.C. Circuits hold that the use of post-arrest, pre-Miranda silence as substantive evidence of guilt violates the Fifth Amendment. See United States v. Velarde-Gomez, 269 F.3d 1023, 1028-30 (9th Cir. 2001) (en banc); United States v. Whitehead, 200 F.3d 634, 637-39 (9th Cir. 2000); United States v. Burson, 952 F.2d 1196, 1201 (10th Cir. 1991); United States v. Moore, 104 F.3d 377, 384-90 (D.C. Cir. 1997). The First, Sixth, and Seventh Circuits go even further and hold that the use of pre-arrest silence as substantive evidence of guilt is impermissible under the Fifth Amendment. See Coppola v. Powell, 878 F.2d 1562, 1567-68 (1st Cir. 1989); Combs v. Coyle, 205 F.3d 269, 280-83 (6th Cir. 2000); Savory v. Lane, 832 F.2d 1011, 1017 (7th Cir. 1987). Finally, the Fourth, Eighth, and Eleventh Circuits hold that the use of post-arrest, pre-Miranda silence as substantive evidence of guilt does not violate the Fifth Amendment privilege against self-incrimination. United States v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985); United States v. Frazier, 408 F.3d 1102, 1109-11 (8th Cir. 2005); United States v. Rivera, 944 F.2d 1563, 1567-68 (11th Cir. 1991).

Pando that, throughout the duration of the interview with him, not once had he bothered asking why he was being interviewed." (emphasis added). After an objection, the officer continued: "We pointed out to him that not once during the whole course of his detention -- not once had he bothered to ask why he had been handcuffed, detained and was now being presently interviewed." (emphasis added). During closing argument, the Government again pointed out that "not once did [Pando] ask why he had been handcuffed and detained in the interview." (emphasis added). Thus, the Government referenced and elicited testimony regarding Pando's silence both before and after he was Mirandized. See, e.g., United States v. Tenorio, 69 F.3d 1103, 1106 (11th Cir. 1995) (holding that district court erred in concluding that evidence referred solely to pre-Miranda silence when government alluded to silence up to and including time spent with officers after being Mirandized). Accordingly, we need not address the issue of whether the Fifth Amendment privilege against self-incrimination applies to post-arrest, pre-Miranda silence because each of the aforementioned statements include references to Pando's post-arrest, post-Miranda silence, which is squarely governed by Miranda.

The Supreme Court has adopted a strict prohibition against the use of post-Miranda silence at trial. See Miranda v. Arizona, 384 U.S. 436, 467-73 (1966); Doyle v. Ohio, 426 U.S. 610, 619 (1980); Wainwright v. Greenfield, 474 U.S. 284, 291 n.5 (1985) ("the use of postarrest, post-Miranda warnings silence [is] impermissible in federal prosecutions") (citing United States v. Hale, 422 U.S. 171 (1975)). The privilege against self-incrimination, however, is subject to waiver "provided the waiver is made voluntarily, knowingly and intelligently." Colorado v. Spring, 479 U.S. 564, 572 (1987) (quoting Miranda, 384 U.S. at 444); United States v. Abrego, 141 F.3d 142, 171 (5th Cir. 1998). Here, Pando does not dispute that he voluntarily waived his Miranda rights with full knowledge that

anything he said could be used as evidence against him. Nor does he dispute that during his interrogation he answered questions about his post-arrest, pre- and post-Miranda silence. In fact, the officers specifically asked Pando why he never questioned the fact that he was being detained and interviewed or if there was a problem with the table, to which Pando responded, the "table must contain drugs." We conclude that by answering these questions after having knowingly received proper Miranda warnings, Pando waived his right to have the entire conversation, including the implicit references to his silence contained therein, used against him as substantive evidence of guilt. See, e.g., United States v. Burns, 276 F.3d 439, 442 (8th Cir. 2002) (holding that evidence of defendant's silence and refusal to answer post-arrest questions is admissible because they were "part of an otherwise admissible conversation" pursuant to defendant's Miranda waiver); see also United States v. Goldman, 563 F.2d 501, 503 (1st Cir. 1977) ("A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to. This was not a case where the government commented upon . . . a prior exercise of rights. The government asked the jury to measure what the defendant said when he had no rights because he had voluntarily waived them."). In short, by knowingly, intelligently, and voluntarily waiving his Miranda rights and then answering questions about his silence, Pando cannot be said to have been exercising his privilege against self-incrimination at that time.[2] Accordingly, we conclude that the admission of such evidence of silence at trial did not violate Pando's Fifth Amendment privilege against self-incrimination.[3]

---

[2] We also note that Pando cannot be said to have been exercising his privilege against self-incrimination when he testified at trial on his own behalf.

[3] Our holding today is a narrow one and relies exclusively on the fact that Pando knowingly, intelligently, and voluntarily waived his Miranda rights and then proceeded to

## IV.   CONCLUSION

For these reasons, the district court's judgment of conviction is AFFIRMED.

---

answer questions about his post-arrest, pre- and post-Miranda silence.  We do not address the issue of whether a Miranda waiver alone has any retroactive effect on the admissibility post-arrest, pre-Miranda silence.  See United States v. Velarde-Gomez, 269 F.3d 1023, 1033-34 (9th Cir. 2001) (en banc); United States v. Hernandez, 948 F.2d 316, 322-24 (7th Cir. 1991) (both holding that subsequent Miranda waivers have no effect on the admissibility of post-arrest, pre-Miranda silence). Moreover, because we conclude that Pando knowingly, intelligently, and voluntarily waived his right to have his silence used against him in this case, we need not address the issue raised by the Government as to whether the evidence at issue is more appropriately characterized as demeanor evidence as opposed to evidence of silence.