**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Guillermo Alberto LUJAN,**
**Defendant-Appellant.**

**No. 85–1634.**

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1986.

Rehearing Denied Oct. 8, 1986.

---

Michael L. Aaronson, El Paso, Tex., for defendant-appellant.

Michael R. Hardy, Michael S. McDonald, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, REAVLEY, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

The appellant, Guillermo Alberto Lujan, appeals his conviction of conspiracy to possess and distribute heroin. Finding no error, we AFFIRM.

Edward J. Lerma, an undercover narcotics agent, began purchasing illegal drugs from Sonny Carreon[1] in the summer of 1984. On May 14, 1985, Lerma met Carreon to buy four ounces of heroin. They met at Carreon's house and then drove in separate cars to a convenience store. Carreon asked Lerma to advance him $10,500 for the heroin. Lerma refused and asked Carreon if he could obtain the heroin from another source. Carreon made a phone call and told Lerma that he had "found somebody." In Lerma's undercover vehicle, they drove to a car wash on the other side of town where Carreon got out of the car and went to another pay phone. Lerma heard Carreon mention "Skaggs Alpha Beta" or "Alpha Beta" and then Carreon got back into the car and told Lerma to continue driving. They went to the Skaggs Alpha Beta grocery store and parked. There, Carreon told Lerma that they were waiting for someone and that Lerma should look for a large yellow vehicle or a small bluish station wagon.

Carreon soon became impatient and walked over to a nearby Chevron station in search of a phone. Carreon went inside and returned to the undercover vehicle eight to ten minutes later. Lerma could not see what Carreon was doing in the gas station. Upon returning, Carreon said that the source had left some time before. At that point, an elderly man, whom Lerma did not know, came up to the car and began making small talk. Carreon left the car and went to the outside wall of the Alpha Beta grocery store, where he stood even after the elderly man had left.

In his rearview mirror, Lerma saw Carreon walk toward a small bluish-grey Nissan station wagon, which was driven by the appellant. Carreon got into the car on the

1. Carreon was originally named as a defendant in this action. Upon Lujan's motion, the defendants were severed for trial.

passenger side and the car then left in a northerly direction in the shopping center parking lot itself. The car was gone for two to three minutes when Lerma saw it again coming from behind the supermarket in the alley. Carreon was still on the passenger side and Lujan was driving. The car parked alongside Lerma's car, two parking spaces to the left. Carreon remained in the car for a few minutes. He then went over to Lerma's vehicle and told him that "all he's [referring to Lujan] got is seven grams until tomorrow." Lerma asked Carreon where the four ounces was and Carreon replied, "Not until tomorrow." Carreon then gave Lerma a tinfoil packet of several different-colored balloons which contained a brown powder later identified as heroin. Lerma signaled for the "bust" and Carreon and Lujan were arrested.

A search of Lujan and his vehicle produced no evidence of drugs or drug paraphernalia. Carreon's vehicle, which was not at the arrest site, contained hypodermic needles, balloons, and small pieces of aluminum foil which contained a brown powdery residue.

After the arrest, Lujan was taken to the Drug Enforcement Agency (DEA) headquarters. On the way, he stated that he had just picked up a man in front of a store at the shopping center. He did not state whether he knew the man. Lujan was asked whether he would help the DEA with its investigations. He said that he would think about it but subsequently provided no assistance.

Lujan was charged with possession of heroin with intent to distribute and with conspiring to possess heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846. At trial, Lujan raised a running objection to Lerma's testimony regarding Carreon's out-of-court statements.[2] At the conclusion of the trial, the jury

acquitted Lujan of the substantive offense of possession but convicted him of conspiracy.

## I.

■ On appeal, Lujan asserts that there was insufficient independent evidence of a conspiracy to justify the admission into evidence of Lerma's testimony regarding the out-of-court statements of Carreon. Lujan challenges the district court's pre-trial finding of substantial independent evidence as well as the court's finding, at the close of the government's case-in-chief, that the statements were admissible by a preponderance of the independent evidence. We will reverse the district court's findings only if we can say that they are clearly erroneous. *See United States v. Olivares*, 786 F.2d 659, 662 (5th Cir.1986).

In *United States v. James*, 590 F.2d 575 (5th Cir.) (*en banc*), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), this court established procedures for determining the admissibility of co-conspirator statements consistent with Fed.R.Evid. 104. As a preliminary matter, the "district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a co-conspirator". *Id.* at 582. Thus, prior to trial, the district court should ascertain that there is " '*substantial, independent* evidence' of a conspiracy at least enough to take the question to the jury." *Id.* at 581 (emphasis in original) (quoting *United States v. Nixon*, 418 U.S. 683, 701 n.14, 94 S.Ct. 3090, 3104 n.14, 41 L.Ed.2d 1039, 1060 n.14 (1974)).[3] Here, the court held a proffer hearing. *See United States v. Nichols*, 695 F.2d 86, 90 (5th Cir.1982). At the proffer, the prosecutor indicated that, on May 14, 1984, an undercover operation involving Carreon was jeopardized by the

---

**2.** On the advice of his attorney, Carreon invoked the Fifth Amendment and, therefore, Lujan did not call him as a witness.

**3.** A court may determine that "it is not reasonably practical to require the showing to be made before admitting the evidence." 590 F.2d at

582. In such a case, the court may admit evidence of the co-conspirator's extrajudicial statements subject to being "connected up." *Id. See United States v. Acosta*, 763 F.2d 671, 679 (5th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985).

fact that Carreon could not obtain heroin from his source. Carreon then took the undercover agent to the other side of town, leading the agent to believe that he could purchase heroin on that side of town. Carreon met one person, Lujan, took seven grams of heroin to the undercover agent, and made the delivery. Based on this proffer, the district court found that the government presented substantial independent evidence of a conspiracy sufficient to take the question to the jury. This finding was not clearly erroneous.

At the close of the government's case-in-chief, Lujan again moved to strike Lerma's testimony regarding Carreon's out-of-court statements. Under *James,*

> Regardless of whether the proof has been made in the preferred order, or the coconspirator's statement has been admitted subject to later connection, on appropriate motion at the conclusion of all the evidence the court must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed, (2) that the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy.

590 F.2d at 582. Lujan contends that the government did not show even one of these three elements by a preponderance of the evidence independent of the hearsay statements.

Although we agree with the district court that "[i]t's a close case on the conspiracy," we cannot conclude that the district court was clearly erroneous in finding that the prosecution met its burden of proof. At the time of Lujan's second motion, there was independent evidence that Carreon was supposed to supply Lerma with four ounces of cocaine and that, on the date of delivery, Carreon could not produce that amount. Accordingly, Carreon made phone calls and directed Lerma to two separate sites. At the second site,

Lujan arrived and Carreon got into the car with him and drove off. Two to three minutes later, they returned. The car parked two spaces to the left of the undercover vehicle. Carreon remained in the car for a few minutes and then walked over to the undercover vehicle and offered the undercover agent seven grams of heroin. Lujan did not leave the parking lot when Carreon left his vehicle. Instead, Lujan waited in his car while Carreon offered the heroin to the undercover agent. From these facts, the district court could find that a conspiracy existed between Carreon and Lujan. Accordingly, we reject Lujan's assertion that the district court erred in refusing to strike Lerma's testimony regarding Carreon's out-of-court statements.

## II.

Lujan also asserts that there was insufficient evidence to support his conviction of conspiring to possess heroin with intent to distribute. After reviewing all of the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), we find that the evidence was sufficient to sustain Lujan's conspiracy conviction. The fact that Lujan was acquitted of the substantive offense is not dispositive. "[J]uries in criminal cases are free to render verdicts on the conspiracy and the underlying felony counts that are inconsistent or even the result of mistake or compromise." *United States v. Swain,* 757 F.2d 1530, 1536 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985).

Lujan's conviction is AFFIRMED.