UNITED STATES of America,
Plaintiff–Appellee,

v.

**D.W. SNYDER, Defendant–Appellant.**

**No. 90–1191.**

United States Court of Appeals,
Fifth Circuit.

April 25, 1991.

Rehearing and Rehearing En Banc
Denied June 21, 1991.

---

Robert Glass, Glass & Reed, New Orleans, La. and Thomas E. Royals, Royals, Hartung & Davis, Jackson, Miss., for defendant-appellant.

James B. Tucker, James Kent McDaniel, Asst. U.S. Attys., and George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before RUBIN, POLITZ, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

D.W. Snyder appeals his convictions for extortion, filing false tax returns, bribery, and conspiracy. Snyder argues that federal jurisdiction was not proper and that the district judge committed reversible error in his instructions to the jury and in his admission of hearsay evidence. Finding that federal jurisdiction is proper and that the district court did not err, we affirm.

D.W. Snyder was the subject of two separate federal indictments involving charges that Snyder abused his position as a member of the Mississippi Public Service Commission.[1] At the time of his indictment, Snyder had served seven terms on the Commission.

The first indictment accused Snyder of three counts of extortion under color of right under the Hobbs Act, 18 U.S.C. § 1951(a), and four counts of filing false tax returns under 26 U.S.C. § 7206(1). The second indictment accused him of one count of conspiracy to commit bribery under 18 U.S.C. § 371 and two counts of bribery under 18 U.S.C. § 666. Snyder was one of three defendants named in the second indictment. The other two defendants were Thurston Little and Travis Ward. After

---

1. The Public Service Commission regulates the activities of public utilities and common carri- ers within the State of Mississippi. *See* Miss. Code Ann. § 77-1-1 *et seq.* (1972).

the court granted each defendant a separate trial, it consolidated Snyder's two indictments for trial.

The evidence showed that Snyder had always run his campaigns informally, often spending his own funds for campaign expenses and replacing them later when he received contributions. During one campaign, Snyder received money from two independent telephone companies and a trucking firm regulated by the Commission. Snyder contended that this money consisted of voluntary campaign contributions. The government argued that the money was the result of extortion by the commissioner under color of right.

The evidence at trial also showed that Snyder and two coconspirators participated in a complicated bribery scheme. As part of the scheme, Snyder agreed to arrange for the Commission's approval of a company's rate increase if the company would agree to business transactions favorable to Snyder and his coconspirators. The trial testimony also suggested that Snyder accepted some funds directly in exchange for influencing the Commission's official actions. Finally, the evidence showed that Snyder failed to report as income the money he received through extortion and bribery.

Snyder was convicted on all ten counts. The court imposed concurrent prison sentences on all counts, resulting in a total prison term of eight years. It also imposed on Snyder fines of $100,000, special assessments of $500, and costs of $33,142.38.

Snyder now contends that the district judge erred in instructing the jury that Mississippi law prohibited Snyder from receiving campaign contributions from enti-

ties regulated by the Commission. He also claims that the court erroneously admitted a hearsay statement by a coconspirator on the bribery counts.

Snyder admits that 18 U.S.C. § 666 extends federal jurisdiction to cases involving bribery by officials of state agencies that receive federal funds. He argues, however, that the statute is inapplicable in this case because the alleged offenses had no impact on the federal funds received by the Commission.

*Jurisdiction*

Snyder was convicted of two counts of bribery under 18 U.S.C. § 666, which prohibits theft and bribery by officials of state and local agencies that receive federal funds.[2] Snyder argues that section 666 should be construed narrowly to provide subject matter jurisdiction only in cases in which the official's alleged conduct directly affects the federal funds received by the agency.

 This question of statutory interpretation is freely reviewable by this Court on appeal. *See United States v. Westmoreland*, 841 F.2d 572, 576 (5th Cir.), *cert. denied*, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988). Snyder urges a variety of arguments on this issue. We find it unnecessary, however, to discuss these arguments in detail because we have previously considered and rejected them. *See id.* at 574–78.

Snyder's attempts to distinguish *Westmoreland* are unpersuasive. As we noted in that case, "Congress has cast a broad net to encompass local officials who may administer federal funds, regardless of

---

**2.** Subsection (b) of the statute in effect at the time of Snyder's alleged misconduct provides:

Whoever, being an agent of an organization, or of a State or local government agency, described in subsection (a), solicits, demands, accepts, or agrees to accept anything of value from a person or organization other than his employer or principal for or because of the recipient's conduct in any transaction or matter or a series of transactions or matters involving $5,000 or more concerning the affairs of such organization or State or local government agency, shall be imprisoned for not

more than ten years or fined not more than $100,000 or an amount equal to twice that which was obtained, demanded, solicited or agreed upon in violation of this subsection, whichever is greater, or both so imprisoned and fined.

18 U.S.C. § 666(b) (1984). Subsection (a) of the statute makes the law applicable to any entity "that receives benefits in excess of $10,000 in any one year period pursuant to a Federal program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of Federal assistance." *Id.* § 666(a).

whether they actually do." *Id.* at 577. Snyder is inextricably caught in the net.

*Jury Instructions*

Snyder also contends that the court erred in instructing the jury on the charges of extortion under the Hobbs Act. We review jury instructions to determine "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. August,* 835 F.2d 76, 77 (5th Cir.1987); *see United States v. Graves,* 669 F.2d 964, 970–71 (5th Cir.1982).

■ Snyder does not argue that the district court's charge was an incorrect statement of federal law. The judge correctly instructed the jury that to establish an offense under the Hobbs Act, the government must prove beyond a reasonable doubt three essential elements: (1) that Snyder induced a person to part with property; (2) that Snyder acted knowingly and willfully by means of extortion; and (3) that the extortionate transaction delayed, interrupted, or adversely affected interstate commerce. The court further explained that extortion under color of official right means the wrongful taking by a public officer of money or property not due to the officer or the office.

■ The judge also correctly noted that a jury must consider any applicable state law. He adequately paraphrased the Mississippi statute that prohibits any member of the Public Service Commission from accepting any "gift, pass, money or any other benefits whatsoever, either directly or indirectly" from anyone employed or connected with any public utility regulated by the Commission.[3]

But Snyder contends that the judge then went hopelessly astray in interpreting the state statute. The judge advised the jury "that as a matter of law a public service commissioner is prohibited from accepting campaign contributions from public utilities and common carriers and that, accordingly, such contributions are not money or property such a public officer is entitled to receive."

Snyder argues that this interpretation of the statute effectively withdrew from the jury the right to decide whether the money received by Snyder consisted of legitimate campaign contributions or illegally extorted funds. Snyder claims this interpretation deprived him of his only defense to extortion and filing false tax returns—that he had not wrongfully taken money but had legally received nontaxable campaign contributions.

■ We review *de novo* questions of statutory construction. *See Farmers–Merchants Bank & Trust Co. v. CIT Group/Equip. Fin., Inc.,* 888 F.2d 1524, 1526 n. 3 (5th Cir.1989). Unfortunately, we have no Mississippi case law and little legislative history to guide us in interpreting this state statute. At the vortex of the dispute is the statutory mandate that members of the Public Service Commission must not accept "any gift, pass, money or any other benefits whatsoever, either directly or indirectly" from anyone employed by a public utility regulated by the Commission. Miss.Code Ann. § 77–1–11 (1972).

3. The Mississippi statute in effect at the time of Snyder's actions provided:

(1) It shall be unlawful for any member of the public service commission or any employee of said commission to accept any gift, pass, money or any other benefits whatsoever, either directly or indirectly, from any person, firm or corporation operating as a public utility or from any person, firm or corporation employed by any public utility regulated by the commission or connected in any way with such utility regulated by the commission....

It shall be unlawful for any person, firm, or corporation operating as a public utility and subject to regulation by said commission, or any person, firm, or corporation employed by or connected in any way with a utility regulated by said commission to offer any gift, pass, money or other benefit whatsoever to any member of the commission or any employee thereof or any candidate for election to the commission....

(2) Any member of the public service commission who shall directly or indirectly accept any gift, gratuity, emolument, or employment from any person or corporation owning or operating any railroad, or from any other common carrier, during his continuance in office ... shall be subject to criminal prosecution....

Miss.Code Ann. § 77–1–11 (1972).

Snyder exhorts us to embark upon a complicated historic and linguistic analysis of the statute. He proffers a profusion of polemics involving (1) the history of the statute, (2) comparison of the statute to other Mississippi statutes, (3) custom and practice under the statute, (4) the *ejusdem generis* doctrine of statutory construction, (5) the need to construe the statute strictly against the state, and (6) first amendment concerns implicated by construing the statute too broadly.

We believe that this assiduous analysis is unnecessary. "The life of the law has not been logic: it has been experience." O.W. Holmes, *The Common Law* 1 (1881). After studying the Mississippi Supreme Court's common-sense approach to statutory interpretation, we conclude that the plain meaning of the statute provides a sufficient basis for our decision. *See, e.g., Knight v. State,* 574 So.2d 662 (Miss.1990); *Frazier v. State,* 504 So.2d 675, 724 (Miss. 1987); *Peoples Bank & Trust Co. v. L. & T. Developers, Inc.,* 437 So.2d 7, 11 (Miss. 1983).

In a recent opinion, the Mississippi Supreme Court confronted the issue of whether the game of bingo constitutes a lottery, which is prohibited by statute in Mississippi. *See Knight,* 574 So.2d at 662. The court explained that "disposition of this case is not reached by purporting to know what the framers intended nor by utilizing Pythagorean logic." *Id.* Instead, the court relied on the experience of the judges and on the popular meanings of the terms "bingo" and "lottery" as shown in dictionaries. *Id.*

The court noted that both games involve the elements of chance, consideration, and prize. But this similarity, the court recognized, does not necessarily mean that bingo is a lottery, for under that approach, the stock market could also be termed a lottery. The court reasoned that the term "lottery" is not a "generic umbrella" that can encompass any enterprise that involves these three elements. Instead, the term "gambling" would be the appropriate generic umbrella. The court therefore concluded that bingo is not a lottery.

In contrast, the statute we consider contains a giant generic umbrella: "any gift, pass, money or any other benefits whatsoever." Miss.Code Ann. § 77–1–11 (1972). A gift is "something voluntarily transferred by one person to another without compensation." *Webster's Ninth New Collegiate Dictionary* 517 (1984). We believe that a campaign contribution fits comfortably within this definition. Thus, even if the money Snyder received consisted of campaign contributions, Mississippi law makes his acceptance of this money illegal because of its source.

The statute contains not only the term "gift," but also the broad expressions "money" and "any other benefits whatsoever." Miss.Code Ann. § 77–1–11 (1972). We cannot conceive of campaign contributions that fall outside the enormous scope of these three categories. We conclude, therefore, that the district judge did not err in instructing the jury that Mississippi law prohibited Snyder from accepting the alleged campaign contributions.

### Admission of Coconspirator's Statement

Snyder also challenges the admission of the testimony of an attorney who had close connections with all three coconspirators. Specifically, Snyder argues that a conversation between the attorney and one coconspirator, Thurston Little, was inadmissible hearsay. According to the attorney, Little came to his office to consult on a legal matter. Little was upset, the attorney explained, about money that Travis Ward, the third coconspirator, allegedly owed Little.

Snyder objected at trial to the attorney's testimony that during the conversation Little said, "He not only owes me but he—you didn't know this, but after the rate case he promised to pay D.W. Snyder $100,000. Now I don't—I intend to get my money even if I have to sue him." Snyder argues that the district court erred in classifying this statement as nonhearsay under the Federal Rules of Evidence because, although made by a coconspirator, the statement was not made "in furtherance of the

conspiracy."[4]

■ The district court's determination that this statement was made in furtherance of a conspiracy is a finding of fact. *See United States v. Lujan*, 796 F.2d 96, 98 (5th Cir.1986). We will reverse this decision only if it is clearly erroneous. *See id.; United States v. Olivares*, 786 F.2d 659, 662 (5th Cir.1986).

■ A statement is made in furtherance of the conspiracy if it advances the ultimate objectives of the conspiracy. *See United States v. Lechuga*, 888 F.2d 1472, 1479 (5th Cir.1989). Although the phrase "in furtherance of the conspiracy" "has a talismanic ring to it, it must not be applied too strictly or the purpose of the exception would be defeated." *United States v. Lindell*, 881 F.2d 1313, 1320 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990); *see Lechuga*, 888 F.2d at 1479–80; *United States v. Magee*, 821 F.2d 234, 244 (5th Cir.1987); *United States v. Patton*, 594 F.2d 444, 447 (5th Cir.1979). We have consistently shunned an overly literal interpretation of this phrase. *See, e.g., United States v. Ascarrunz*, 838 F.2d 759, 763 (5th Cir.1988); *United States v. Rodriguez*, 689 F.2d 516, 519 (5th Cir.1982).

■ After studying the record, we acknowledge that this decision was a close one. We do not believe, however, that the district court's conclusion was clearly erroneous. The attorney testified that Little and other members of the conspiracy exerted subtle pressure on him to assist in the complicated scheme. The record supports the inference that Little's statement about the money Ward owed was intended to facilitate the flow of ill-gotten funds to the members of the conspiracy. *See United States v. Diez*, 515 F.2d 892, 900 (5th Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976); *see also United States v. Metz*, 608 F.2d 147, 153 (5th Cir. 1979), *cert. denied*, 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980) (concluding that a plan to launder ill-gotten proceeds was one facet of a cocaine distribution scheme).

Snyder and the attorney had a conversation about money Ward owed to Snyder. Later, Little told the attorney that Ward owed money to both Little and Snyder. Little also suggested to the attorney that a lawsuit might be necessary to force Ward to pay the money he owed Little. Little and Snyder knew that the attorney had close connections to Ward; in fact, Ward had first introduced Little to the attorney.

The attorney testified that under the surface of Little's remarks were often hidden agendas that Little was seeking to accomplish. It is not clear that Little's statement to the attorney was merely idle conversation that should have been excluded. *See Lechuga*, 888 F.2d at 1479–80; *United States v. Means*, 695 F.2d 811, 818 (5th Cir.1983); *United States v. Phillips*, 664 F.2d 971, 1027 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

In light of the evidence, the district judge could have reasonably concluded that Little's comments to the attorney were designed to enlist the attorney's help in collecting from Ward the proceeds of the bribery scheme. Consequently, his conclusion that Little's statement was in furtherance of the conspiracy was not clearly erroneous. A statement made by a coconspirator in furtherance of the conspiracy is not hearsay under the Federal Rules of Evidence. The district judge, therefore, did not err in ruling that it was admissible evidence under Rule 801(d)(2)(E).

*Conclusion*

Under 18 U.S.C. § 666, this Court has jurisdiction over this dispute regardless of whether the alleged offenses had any impact on the federal fu ds actually received by the Commission. We find no error in the district court's instruction to the jury that Mississippi law prohibited Snyder from receiving campaign contributions from entities regulated by the Commission. We also conclude that the judge's admission into

---

**4.** Rule 801(d)(2)(E) provides that a statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E).

evidence of a statement by a coconspirator was not clearly erroneous. Accordingly, we affirm the judgment of the trial court.

AFFIRMED.