**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 92-4028
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GUSSIE L. McCONNELL and
WILLIE R. McCONNELL,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

(April 5, 1993)

Before WISDOM and DUHÉ, Circuit Judges, and DOHERTY[1], District
Judge.

PER CURIAM:

Gussie L. McConnell and Willie R. McConnell appeal their
conviction for conspiracy to commit mail fraud and mail fraud in
furtherance of that conspiracy in violation of 18 U.S.C. §§ 371,
1341. The McConnells argue the trial court erroneously admitted a

_____

[1] District Judge of the Western District of Louisiana,
sitting by designation.

hearsay statement and evidence of coconspirators' illegal activities, as well as arguing there was insufficient evidence to support their conviction. Finding that the court below erred in admitting the challenged testimony, we REVERSE the convictions.

Appellants were indicted in May, 1988, along with twenty-two (22) other individuals, for mail fraud and conspiracy to commit mail fraud. The indictment alleged the twenty-four (24) Defendants conspired to use the United States mail for the purpose of defrauding various insurance companies "by means of false and fraudulent pretenses, representations and promises." Indictment of May 12, 1988, at 2. The indictment alleged that the essential feature of the scheme to defraud the insurance companies was that the conspirators caused their own admission into hospitals for injuries which they knew did not require hospitalization, were incurred as a result of accidents which were staged, or never occurred at all. Id. After alleging the facts regarding the conspiracy itself, the indictment went on to list the hospitalizations of all twenty-four (24) Defendants, identifying them as the "overt acts" undertaken by Defendants in furtherance of the conspiracy. Finally, the indictment proceeded to list the documents received by the Defendants through the United States mail.

All of the Defendants named in the indictment either pled guilty or were convicted after trial. Appellants were tried

2

separately from the other Defendants who chose not to plead guilty. Trial of Appellants was had in October, l991 and they were convicted on all counts with which they had been charged.[2]

## The Evidence

The government presented four (4) witnesses at Appellants' trial. The first two witnesses, Evelyn Hassen and Michael McFarland, were alleged coconspirators of Appellants; the second two were F.B.I. agents who had participated in the investigation which led to the indictment.

Ms. Evelyn Hassen had pled guilty to participating in the conspiracy and testified primarily concerning her and her husband's acts in furtherance of the conspiracy. Of vital importance to this appeal, Ms. Hassen also testified that her husband, Grady Hassen - who is related to both Appellants - had once mentioned to her that Gussie McConnell "was just in the insurance and he had helped her out with a couple of policies." (Tr. at 8.) This was the only direct evidence produced by the government at trial of a link between Appellants and the conspiracy alleged in the indictment. Counsel for both Appellants objected to admission of the statement as hearsay. The trial court overruled the objection conditioned upon a proper predicate being laid, but the record does not reflect

---

[2] At trial, the government acknowledged it lacked evidence in connection with Count 352 of the indictment and therefore moved for and was granted dismissal of that count.

3

the Court's revisiting the issue thereafter for a determination of whether the predicate had been met. The only subsequent reference to the hearsay statement made by the Court was in connection with deliberations on whether the government had proven sufficient connection between Appellants and the conspiracy to make the coconspirators' illegal activities relevant at this trial.[3]

The second witness, Michael McFarland, testified exclusively about the conspiracy: how it was run and by whom, as well as his knowledge regarding Grady Hassen's connection to the conspiracy. Mr. McFarland had been convicted of participating in the conspiracy of which Appellants were alleged to be a part. He testified that he did not know the Appellants or whether they were connected to the conspiracy. Mr. McFarland testified that he had seen Grady Hassen conversing with the leader of the conspiracy, Sammy Duncan. He testified that they had been discussing the insurance business. This provided the connection between Grady Hassen and the conspiracy which, in combination with Evelyn Hassen's testimony that Grady Hassen had once mentioned Gussie McConnell, provided the link between the Duncan conspiracy and Appellants.

Mr. McFarland then went on to explain the way that the conspiracy worked. He testified that he took instructions from Sammy Duncan, who would direct him regarding the type of accidents

---

[3] The Court: "Ms. Hassen, if her testimony is believed by the jury, firmly ties in the defendants with Mr. Hassen." (Tr. at 238.)

4

to claim and to which hospitals and doctors to present himself for admission. Duncan also did the paperwork necessary to obtain insurance coverage for McFarland and, at times, completed the necessary papers to make claims to the insurance companies. Further, Mr. McFarland would endorse the insurance checks over to Duncan, who would cash them and return some part of the money to Mr. McFarland.

The third witness who testified for the government was F.B.I. agent Kenneth R. Klocke, who participated in the investigation of the Duncan conspiracy. Agent Klocke testified to the mileage distances between Appellants' home and the various hospitals to which they presented themselves for admission during the course of their alleged association with the Duncan conspiracy. The closest hospital was Jackson Parish Hospital, 8.2 miles from Appellants' home; the farthest hospital was LaSalle General Hospital in Jena, Louisiana, 73.8 miles from Appellants' home.

The fourth and final witness who testified at Appellants' trial on the government's behalf was F.B.I. agent Jerry L. Richardson, who investigated the conspiracy in connection with the indictment. Agent Richardson's testimony was by far the longest at trial. Agent Richardson was the only witness who testified regarding acts of Appellants themselves and his testimony consisted of information about the insurance applications and claim forms which the government contended were filed by Appellants with false

5

and/or incomplete information.

Mr. Richardson testified that Willie McConnell had been in the hospital twice; once after a claimed motor vehicle accident and once 18 months later when he claimed to have fallen in the attic of his home. Both hospitalizations were for contusions and sprains, both at the Jackson Parish Hospital eight (8) miles from his home. Six insurance companies paid on the hospital indemnity policies for the first accident and eleven (11) insurance companies paid on policies for the second accident. Payments on the claims had been mailed to Willie McConnell after both claims. Agent Richardson testified that many of the claim forms were incomplete because they did not acknowledge that Mr. McConnell had ever suffered any similar condition before and because they did not acknowledge the existence of other insurance policies. Mr. Richardson gave no testimony that Willie McConnell knew or coordinated his activities with Duncan or anyone involved in the conspiracy.

Mr. Richardson testified that Gussie McConnell had been in the hospital seven times between April, 1980 and May, 1984. Agent Richardson testified that Gussie McConnell was hospitalized for lumbar injury and gastritis, for contusions to her left shoulder and rib cage, for lumbar and sacroiliac strain, for trauma to her right hip, for trauma to her right shoulder, for acute lumbar strain, and, finally, for injury to her low back, right leg, and hip. Claims under multiple indemnity insurance policies were made

in connection with each of these hospitalizations: three policies for the first hospitalization and an increasing number for subsequent hospitalizations culminating with 18 policies for the seventh hospitalization. Mr. Richardson testified that claims made in connection with each hospitalization were incomplete for failure to reference the existence of other insurance policies in nearly every instance and, in many instances, for failure to reference previous similar injuries and/or physical conditions.

Finally, Agent Richardson testified regarding applications for many of these insurance policies which Appellants owned during the relevant time period. Again, many applications did not acknowledge that Appellants owned other insurance policies, indemnity or otherwise, and some applications did not acknowledge prior treatment for certain specified injuries or illnesses or prior hospitalizations within a particular time frame.

The government's theory of this case is as follows. The Duncan conspiracy, the workings of which Mr. McFarland and Ms. Hassen described, was proven to have existed. Mr. McFarland testified to the connection of Grady Hassen to the conspiracy. Ms. Hassen testified to the connection between Grady Hassen and Gussie McConnell. Gussie McConnell was married to Willie McConnell and Gussie and Willie McConnell were both related to Grady Hassen. The similarity in the pattern of types of accidents, types of injuries, and travel to distant hospitals, between the McConnells' behavior

7

and that of the admitted or convicted conspirators, the government contends, along with the proven connection between the conspiracy and the McConnells, proves the Appellants' guilt of participation in the conspiracy.

## Hearsay

Appellants' first challenge is to the trial court's ruling allowing into evidence Evelyn Hassen's testimony regarding her husband's out-of-court statement.[4]  Appellants argue the statement is inadmissible hearsay.  The government contends the statement is by a coconspirator and, therefore, an exception to the hearsay definition under FRE 801(d)(2)(E).

Admission and exclusion of evidence by a trial court is reviewed for abuse of discretion.  United States v. Moody, 903 F.2d 321, 326 (5th Cir. 1990).  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FRE 801(c).  Rule 801 goes on, however, to list certain types of statements which are not hearsay.  One type of statement which is not hearsay is that made "by a coconspirator of a party during the course and in furtherance of the conspiracy."  FRE 801(d)(2)(E). As argued by Appellants - and not challenged by the prosecution -

---

[4]  Ms. Hassen testified that Mr. Hassen had told her Gussie was in the insurance and that he had helped Gussie out with a couple of policies.

8

the statement at issue herein, that Gussie was in the insurance, clearly falls within the definition of hearsay, i.e., an out of court statement offered to prove the truth of the matter asserted, unless the conditions of the coconspirator exception are met.

In order to fit the coconspirator exception, a statement must have been made (1) by a coconspirator of a party, (2) during the course of the conspiracy, and (3) in furtherance of the conspiracy. Appellants challenge whether the government proved the first and third elements of the test. Because we find that the government did not prove the statement had been made in furtherance of the conspiracy, this Court will not address whether the coconspirator element was proven.

"A statement is made in furtherance of the conspiracy if it advances the ultimate objectives of the conspiracy." United States v. Snyder, 930 F.2d 1090, 1095 (5th Cir.), cert. denied, 112 S.Ct. 380 (1991). Mere conversation between conspirators is not admissible under the exception. United States v. James, 510 F.2d 546, 549 (5th Cir. 1975) (en banc). The determination of whether a statement was made in furtherance of a conspiracy can, in the appropriate circumstances, be made by reference to the statement alone. In this case, however, Grady Hassen's purpose in making this statement is not obvious from the statement itself. The government's appeal brief suggests two possible reasons for Grady Hassen's statement; several other possibilities were suggested by

9

Appellants in their brief and at oral argument. None of these suppositions can be proven by reference to the statement itself without an understanding of the context in which the statement was made. As the prosecution failed to present any evidence whatsoever concerning the context in which this statement was made, it is not possible for this Court to determine the basis for the trial court's implicit finding that the statement was made in furtherance of the conspiracy.

Ms. Hassen testified to the statement at the beginning of the trial. (Tr. at 8.) Defense counsel objected that no predicate had been laid at that point. (Tr. at 7.) The government attorney asserted that he would lay the proper foundation. Id. The trial court allowed the testimony to go forward conditioned on the predicate being laid. (Tr. at 7-8.) However, the question of whether the proper foundation had been laid was not revisited by the Court. No testimony was elicited regarding the context in which the statement was made by Grady Hassen to Evelyn Hassen. There is no evidence in the record which suggests the purpose for which the statement was made. As the context in which the statement was made is not obvious from the statement itself, and no testimony regarding the context was elicited by the government, there was no basis for the trial court to find that the statement had been made in furtherance of the conspiracy. Indeed, the record does not reflect the trial court made any finding other than that conditioned upon the government's laying the proper foundation; the

10

government did not do so. Without a finding that the proper predicate had been laid, the trial court did not have discretion to allow the statement into evidence. We find that the trial court abused its discretion in admitting Grady Hassen's statement without the government having laid the proper foundation that the statement had been made in furtherance of the conspiracy.

## Conspirators' Activities

Appellants next challenged the trial court's ruling on their objection to the testimony regarding the activities of convicted and/or admitted members of the Duncan conspiracy. Appellants argue insufficient evidence of a connection between them and the conspiracy was presented by the government at trial. The prosecution contends, on the other hand, the trial court's ruling was correct.

Again, review of evidentiary determinations is for abuse of discretion. United States v. Moody, 903 F.2d at 326. In order for the evidence of the conspirators' illegal acts to have been relevant, the government must have provided evidence of a connection between Appellants and the conspiracy of which they were accused of being a part. See Lutwak v. United States, 344 U.S. 604, 608 (1953). The introduction of inadmissible evidence of criminal acts of Defendants' associates runs the risk of a finding of guilt by association. This Court has repeatedly noted the

11

highly prejudicial effect of the introduction of evidence which suggests guilt by association. See e.g., United States v. Romo, 669 F.2d 285, 288 (5th Cir. 1982), cert. denied, 459 U.S. 1021 (1982); United States v. Singleterry, 646 F.2d 1014, 1018 (5th Cir. 1981); United States v. Labarbera, 581 F.2d 107, 109 (5th Cir. 1978).

Considerable testimony concerning the Duncan conspiracy, its innerworkings, and the acts committed by Mr. McFarland and Mr. and Ms. Hassen in connection with the conspiracy, was admitted into evidence. Counsel for Appellants objected to the testimony, arguing that the government had not laid a proper foundation upon which to find the activities of the conspirators relevant to the case against Mr. and Mrs. McConnell. The Court heard arguments at several points in the trial on the admissibility of the conspirators' activities. (Tr. at 5, 11, 26-27, 166-74, 233-40.) It was not until the government had rested, however, that the court directly addressed the question of the admissibility of the evidence, in the context of a motion for mistrial by Appellants. The trial court denied the motion for mistrial, reasoning that sufficient connection between Appellants and the conspiracy had been presented to support a finding that the testimony of Mr. McFarland and Ms. Hassen was relevant at the trial. (Tr. at 238-40.) The court reasoned as follows: Mr. McFarland testified about his own connection to Duncan and the conspiracy; Mr. McFarland's testimony established that Duncan and Grady Hassen knew one another

12

and discussed insurance business; Ms. Hassen's testimony established a connection between Grady Hassen and Gussie McConnell. With sufficient testimony in evidence to establish the chain of connection between the conspiracy and Appellants' the Court found that the similarity in patterns of conduct between the McConnells and the conspirators, in combination with the government's entitlement to all reasonable inferences in the context of a motion for mistrial[5], provided sufficient evidence of Appellants' connection to the conspiracy to make McFarland's and Hassen's testimony relevant.

One crucial link in the chain between Appellants and the conspiracy upon which the trial court relied was established with inadmissible hearsay testimony. As this Court has already found, the statement by Grady Hassen, to which Evelyn Hassen testified, should not have been admitted into evidence and, therefore, should not have been considered by the Court in its determination of whether the testimony regarding the conspirators' criminal activities was relevant at this trial. Without evidence of a link between Grady Hassen and Gussie McConnell, the Court's reasoning on the relevance of the testimony regarding the criminal acts of the conspirators fails.[6] The only remaining evidence which the trial

---

[5] The court relied upon <u>Glasser v. United States</u>, 315 U.S. 60 (1942).

[6] Even with consideration of the statement, there is no link between the conspiracy and Willie McConnell, inasmuch as the Grady Hassen statement refers only to Gussie.

13

court had before it[7] to use in determining the relevance of the conspirators' activities was the similarity in patterns of conduct between Appellants and the convicted conspirators.

We find that, as regards Willie McConnell, there was not sufficient similarity to find the criminal activities of the conspirators relevant at this trial. The government in oral argument urged the multiple policies and claims as well as the non-serious nature of his injuries, as similarities sufficient to sustain admission of the evidence; however, the list of dissimilarities is much longer. Both of Willie McConnell's hospitalizations occurred at the same hospital, with the same doctor, only eight (8) miles from home. He was hospitalized only twice during the relevant time period. Unlike other members of the conspiracy, there is no evidence that the McConnells received instructions from Duncan, that Duncan obtained policies on the McConnells' behalf, nor that Duncan shared any proceeds with them. There is no evidence in the record the McConnells even knew or ever spoke with Duncan, the leader of the conspiracy in which they were allegedly involved.

---

[7] The government makes much of the fact that Grady Hassen is related to both appellants, thereby providing an additional link between the conspiracy and the McConnells. However, this Court has made very clear its opinion of prosecutors' attempts to prove guilt by association. United States v. Romo, 669 F.2d at 288 ("That one is married to, associated with, or in the company of a criminal does not support the inference that the person is a criminal or shares in the criminal's guilty knowledge.")

The simple fact that Willie McConnell had two soft tissue injuries and multiple indemnity insurance policies does not provide sufficient connection between him and the conspiracy to make the testimony regarding the conspirators' criminal activities relevant. As the government conceded[8], obtaining multiple _indemnity_ policies is not in and of itself illegal and one must not lose sight of the fact the McConnells were indicted and tried for _conspiracy_ to commit mail fraud and mail fraud in furtherance of that conspiracy. In order to use the illegal actions of conspirators as evidence against the McConnells, the government must first establish a connection between the McConnells and the conspiracy. The trial court's analysis of the connection is based, in part, on inadmissible evidence and, therefore, fails; without evidence of a connection between Hassen and Gussie McConnell, we find the testimony of Evelyn Hassen and Michael McFarland was inadmissible as to Willie McConnell. As the trial court noted, and the government conceded[9], this evidence was so prejudicial that its erroneous admission entitled Appellants to a mistrial. We find the trial court was correct in its estimation of the prejudicial effect of this testimony on the trial. The admission of this evidence without the proper foundation is reversible error.

We find that, as regards Gussie McConnell, the similarities in conduct between she and the members of the conspiracy were

---

[8]  (Tr. at 134-35.)

[9]  (Tr. at 237.)

sufficient to prove that they were engaged in similar conduct, but not sufficient to prove they were engaged in the same conspiracy. Gussie was proven to have had multiple indemnity insurance policies, to have had multiple soft tissue injuries in a four-year period of time, and to have traveled far distances to the same hospitals and doctors used by at least some members of the conspiracy. However, as is the case with Willie McConnell, there are significant dissimilarities. Mr. McFarland admittedly, and Grady Hassen apparently, took instructions from Duncan regarding the type of accidents to have and to which hospitals and doctors to present themselves for treatment, and shared proceeds with Duncan. There is no evidence that Duncan and the McConnells even knew each other, much less that Duncan was providing instructions on insurance fraud. There is no evidence Duncan helped the McConnells obtain policies or complete claim forms, as Duncan did with other members of the conspiracy. Again, and perhaps most importantly, the conspirators shared the proceeds of their fraud with Duncan; there is no evidence in this record of any such sharing between the McConnells and Duncan.

The demonstrated similarities between Gussie McConnell's pattern of conduct and that of admitted or convicted conspirators, although more extensive than in Willie's case, still is not sufficient to establish a link between Gussie and the conspiracy such as to make relevant the testimony of Mr. McFarland and Ms. Hassen. We find the testimony of Evelyn Hassen and Michael

16

McFarland was inadmissible as to Willie McConnell. Further, we find the trial court was correct in its estimation of the prejudicial effect of the inadmissible testimony at trial. The trial court abused its discretion by admitting this testimony into evidence.

In view of our finding of reversible error, we need not address Appellants' challenge to the sufficiency of the evidence to convict them.

## Conclusion

Gussie and Willie McConnell were indicted for participating, along with twenty-two (22) others, in a conspiracy to defraud insurance companies and for the mail fraud used to accomplish the conspiracy's aim. At Appellants' trial, the government introduced a hearsay statement without proving the statement's admissibility and introduced conspirators' illegal activities without establishing that their acts were relevant. Because the trial court's rulings allowing the inadmissible evidence to be introduced were clearly erroneous and severely prejudiced Appellants, we REVERSE Appellants' convictions.

REVERSED.

17