Affirmed and Majority and Concurring Opinions filed July 17, 2003









Affirmed and Majority and Concurring Opinions filed
July 17, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-01173-CR

NO. 14-01-01174-CR

____________

 

RANDY DALE TIBBS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 351st District Court

Harris County, Texas

Trial
Court Cause Nos. 872,137 and 872,015 



 

M
A J O R I T Y   O P I N I O N

Following
a jury trial, appellant Randy Dale Tibbs was
convicted of murder and aggravated assault with a deadly weapon.  See Tex.
Penal Code Ann. '' 19.02 and 22.02 (Vernon 1994). 
The jury assessed punishment at fifteen years=
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  In one issue, appellant
contends the trial court committed reversible error when it admitted certain
character evidence.  We affirm.

 








BACKGROUND

Appellant=s
charges arose out of a fight that occurred on Saturday, March 17, 2001.  On that date, appellant, his fiancee, and their two young children visited the home of
appellant=s friend, Brian Brown. 
Appellant helped Brown clear brush from Brown=s
land and, upon completion of this task, appellant and his family stayed for a
barbecue.  At approximately 6:00 p.m.,
appellant and Brown left to purchase beer at a convenience store.  They took Brown=s Ford Explorer and were accompanied by appellant=s
fifteen-month-old daughter, Mary. 

At
the convenience store, Brown and appellant entered the store with Mary.  While Brown and appellant were in the store,
complainant Simmons parked his vehicle and blocked Brown=s
car.  When Brown, appellant, and Mary
returned to their vehicle, harsh words were exchanged between either Brown and
Simmons or appellant and Simmons.  As
Brown circled the parking lot to leave, his car was either flagged down by
Simmons, or he decided to confront Simmons on his own.  An altercation arose between Simmons and
Brown and the two men proceeded to fight with their fists.  After several minutes, complainant Ponce, who
was also at the store, entered the fight to defend his friend Simmons.  There were several bystanders.  

Although
witnesses gave significantly different accounts of the fight, witnesses agree
that at some point, appellant became part of the struggle.  He was the only one with a weapon; a AK-bar
knife@
with a 9-inch blade.  Appellant admits
stabbing Simmons once in the side and Ponce once in the back and once in the
chest.  Ponce died at the scene from
injuries inflicted by appellant; Simmons suffered a punctured lung but has
since recovered.








Matthew
Simmons testified that the fight began because either Brown or appellant yelled
a racial slur at him as he walked toward the convenience store.  According to Simmons, he walked up to the
truck and had words with Brown.  After
words were spoken, Brown exited the truck and began to fight with Simmons.  Ponce joined the fight to help Simmons.  Brown hit Simmons so hard Simmons fell to his
knees and became disoriented.  When
Simmons re-oriented himself, he saw Ponce and Brown fighting near the passenger
side of the truck.  Simmons then tried to
split Ponce and Brown apart.  While
trying to break up the fight, Simmons was stabbed by appellant.

According
to appellant=s testimony, Simmons started a fight with Brown for no apparent
reason.  Appellant testified Brown was
being beaten by several men and was yelling, AGet=m off me. Get=m off me. Somebody call the cops.@  The  men moved so close to the truck in which
appellant and his daughter were sitting that the truck began to rock with the
force of the fighting.  As that happened,
appellant began to look for something with which to defend himself.  Appellant found a knife in the back of Brown=s
truck.  At that moment, appellant
testified someone pulled him out of the truck. 
Appellant said he thought about driving away, but was unable to do so
before someone pulled him out of the truck.

At
trial, the State=s theory of the case was that appellant and Brown were white
supremacist Askinheads@ and that the fight was racially motivated. To support this
theory, evidence was offered to show:  

$          Appellant and Brown are both
Caucasians; both had shaved heads the day of the fight; and Brown had swastika
and neo-Nazi lightening bolt tattoos over much of his body­. 

$          Simmons is half African-American; Ponce
was Hispanic.

$          Brown=s
actions the day of the fight were, according to bystanders,Afull
of hate.@

$          Brown made derogatory remarks to a
Pakistani store clerk.

$          Either Brown or appellant started the
fight by addressing Simmons with a racial slur.

$          Brown made racially-charged comments
during the fight.

$          Brown was known as a racist and Aneighborhood
skinhead@ prior to the
fight.

$          Brown was once arrested for
spray-painting a wall covered with AMexican
graffiti.@








$          Brown once
claimed to worship AOdin@ in the religious-preference section of a police department
booking sheet.[1]          

Appellant=s
theory of the case was that appellant stabbed Ponce and Simmons in self-defense
and in defense of Brown and appellant=s daughter.  To support
this theory, appellant offered the following evidence: 

$                  
Appellant and Brown went to the store to
buy beer, not to provoke a racially-charged incident.

$          Brown has friends and family who are
Hispanic and African-American.

$          Brown attends a Baptist church and his
mother is unaware of any affiliation with AOdin.@

$          Brown and appellant have reputations
for peacefulness and are not racists.

$          Simmons admits he has been convicted
three times for assault and that he is not the type to back down from a fight.

$          While Simmons admits he had six to
seven beers prior to the fight, neither Brown nor appellant ingested alcohol
prior to the incident.

$          Ponce=s
autopsy revealed his blood alcohol level was three times the legal driving
limit, he had significant amounts of pure cocaine in his body fluids, and he
took cocaine within an hour of his death.

$          The bulk of Brown=s
tattoos were covered by clothing the night of the fight and the tattoos
described by the State as Aneo-Nazi@
were not visible.

$          Brown made innocuous small talk with
an African-American man in the store immediately prior to the fight.

$          Brown=s
use of the word Anigger@
was made in an inoffensive way.

$          Brown did not provoke the fight with
Simmons; rather, Simmons initiated it by blocking Brown=s
vehicle and by engaging Brown as he tried to exit the parking lot.








$                  
Brown tried to disengage during the fight
by (1) initially driving away from Simmons before being flagged down; (2) pointing
out there was a little girl in the car; and (3) calling for appellant=s
help after Ponce, Simmons, and two others outnumbered Brown in the fight.      

$                  
Appellant remained in the car with Mary,
despite Brown=s calls for
help and his being outnumbered by at least four to one.   

$          Appellant feared for Brown=s,
Mary=s, and his own
safety, and he perceived a threat of bodily harm because Brown was hit on the
head with a beer bottle.

$          Appellant was pulled from Brown=s
car by Brown=s attackers; he
did not leave the vehicle willingly.  

$          Fearing for Mary=s
and Brown=s safety, as
well as his own, appellant blindly swung the knife at his attackers.

$          As a result of the encounter,
appellant suffered a black right eye, bruised left eye, and an injury to his
hand. 

 

ANALYSIS

Appellant
asserts one point of error, arguing the trial court committed reversible error
when it (1) admitted irrelevant and unfairly prejudicial evidence that Brown,
who was with appellant at the time of the charged offenses, was a neo-Nazi
skinhead; (2) allowed the State to portray appellant as a skinhead by this
association; and (3) admitted other irrelevant and unfairly prejudicial,
racially-charged evidence.

Standard
of Review

We
review a trial court=s ruling on the admissibility of evidence under an abuse of
discretion standard.  Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000).   We will reverse only if the
trial court=s decision falls outside the zone of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372, 391-92
(Tex. Crim. App. 1990).

 

 








Waiver

In
his appeal, appellant objects to the trial court=s admission of several pieces of evidence pertaining to Brown=s
character.  Specifically, he objects to
the State=s evidence that suggests Brown is a racist and Askinhead,@
Brown was once arrested for spray-painting over Mexican graffiti, Brown once
identified himself as an AOdinist@
on a police booking sheet, and Brown has Swastika and ASS@
tattoos over much of his body.

The
State asserts appellant waived his right to appeal most of this evidence.  First, the State asserts appellant failed to
timely object to much of the objectionable evidence.  See Tex.
R. App. P. 33.1(a)(1)(A); Lagrone v.
State, 942 S.W.2d 602, 618 (Tex. Crim. App.
1997).  Next, it asserts appellant
elicited similar evidence in other testimony and so cannot now object to the
evidence=s
admission.  See Leday
v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).  Third, it
asserts appellant provided no record cites to certain evidence and so forfeited
his right to object to the evidence=s admission.  See Tex. R. App. P. 38.1(h); Aldrich v.
State, 928 S.W.2d 558, 560 n.2 (Tex. Crim. App. 1996).  Finally, the
State argues appellant=s written motions and running objections were ineffective in
preserving error for appellate review.  See
Gonzales v. State, 994 S.W.2d 170, 171-72 (Tex. Crim. App. 1999). 








To
preserve error for appellate review the complaining party must make a timely
objection specifying the grounds for the objection if the grounds are not
apparent from the context, the objection must be made at the earliest possible
opportunity, and the complaining party must obtain an adverse ruling.  Dixon v. State, 2 S.W.3d
263, 265 (Tex. Crim. App. 1998).  The objection will be sufficient to preserve
error for appellate review if the objection communicates to the trial judge
what the objecting party wants, why the objecting party thinks himself or
herself entitled to relief, and does so in a manner clear enough for the judge
to understand the objection and request at a time when the trial court is in a
position to do something about it.  Lankston v. State, 827 S.W.2d
907, 908-09 (Tex. Crim. App. 1992).  Here, appellant filed a motion in limine, objected at the time the evidence was admitted, and
obtained running objections to any evidence that appellant or Brown was a
member of a racist gang.  Therefore,
appellant preserved error.

Character
Evidence

 

At
trial, all relevant evidence is admissible unless otherwise excepted by the
Constitution, statute, or other rules.  Tex. R. Evid. 402.  ARelevant evidence@ is defined as evidence having Aany tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence.@  Tex. R. Evid. 401.

Gang
membership evidence is admissible under Texas Rule of Evidence 404(b) if it is
relevant to show a non-character purpose that in turn tends to show commission
of the crime.  Vasquez v. State, 67
S.W.3d 229, 239-40 (Tex. Crim. App.
2002).  Gang membership may be admissible
to show bias, motive, intent, or to refute a defensive theory.  See, e.g., United States v. Sargent, 98 F.3d 325, 328 (7th Cir. 1996); Stern v.
State, 922 S.W.2d 282, 287 (Tex. App.CFort Worth 1996,
pet. ref=d).

Here,
appellant=s defensive theory was that he stabbed the complainants because
he was defending Brown, Mary, and himself. 
Evidence of Brown=s membership in a racist gang served to rebut appellant=s
testimony that he and Brown were attacked by several men without
provocation.  Simmons testified that the
fight began when someone in Brown=s truck yelled a racial slur as Simmons walked by the
truck.  Simmons further testified that he
thought Brown and appellant Awere a member of some kind of thing.@  








Appellant
contends the evidence was inadmissible because it tended to show appellant=s
guilt by association with Brown.  The
cases cited by appellant hold evidence that tends to show guilt by association
is inadmissible because it has no bearing on the accused=s
guilt or innocence.  See generally
United States v. Parada-Talamantes, 32 F.3d 168
(5th Cir. 1994); United States v. Roark, 924 F.2d 1426 (8th Cir. 1991); United
States v. Romo, 669 F.2d 285 (5th Cir. 1982); Gant
v. State, 513 S.W.2d 52 (Tex.
Crim. App.
1974).  The facts of this case, however,
make evidence of Brown=s and appellant=s association with a racist gang admissible to rebut appellant=s
defensive theories.  Simmons testified
that Brown and appellant started the fight by uttering a racial slur.  Appellant testified that Simmons started the
fight by blocking their vehicle in the parking lot.  Appellant further testified that he used the
knife to defend himself because Brown was being beaten by several men.  Evidence of Brown=s
racial bias was admissible to rebut appellant=s theory that Simmons started the fight and that appellant was
acting in self-defense.[2]  See Ortiz v. State, 93 S.W.3d
79, 94 (Tex. Crim. App. 2002), cert. denied,
___ U.S. ___, 71 USLW 3531 (2003). 
Because the trial court did not err in admitting the evidence, appellant=s
sole point of error is overruled.

The
judgment of the trial court is affirmed.

 

 

 

/s/        Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered and Majority and
Concurring Opinions filed July 17, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.(Anderson, J. concurring).

PublishCTex. R. App. P. 47.2(a).

 











[1]  According to
testimony offered at trial, Odin is a Norse god whose teachings are followed by
some white supremacists.





[2]  The
concurrence states that although appellant received a self-defense instruction
at trial, he was not entitled to that instruction; therefore, the State was not
entitled to introduce evidence to rebut appellant=s defense.  The concurrence cites a dissenting opinion in
Mozon v. State, 991 S.W.2d 841 (Tex. Crim. App. 1999), in support of this proposition.  The concurrence cites no other authority, nor
can we find any authority, that would allow this court to review admissibility
of evidence based on a hypothetically correct charge.