[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13528

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MANUEL ANGEL VELEZ-ACOSTA,
a.k.a. Angel Manuel,
a.k.a. Manuel Angel Velez-Costa,
HERNAN DAVID GONZALES-QUIROZ,
a.k.a. Hernando David,
ANDRES NIXON GONZALES-CATAGUA,
a.k.a. Nexon Gonzalez,
GUILLERMO CABRERA PEREZ,

2                    Opinion of the Court                    22-13528

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00047-SCB-JSS-1

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Manuel Angel Velez-Acosta, Hernan David Gonzales-Quiroz, Andres Nixon Gonzales-Catagua, and Guillermo Cabrera Perez (collectively, Defendants) appeal their convictions and sentences under the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. § 70501, *et seq*. They argue that: (1) the district court erred in finding that it had jurisdiction because the Defendants were not asked to give a nationality for their vessel as required by the MDLEA; (2) the district court abused its discretion in admitting evidence of a passport carried by Cabrera Perez, testimony by two Coast Guard officers, and trace cocaine detections by IONSCAN machines; (3) the government did not adduce sufficient evidence to convict them, as only estimates of the quantity of cocaine were available to the jury; (4) the district court clearly erred in calculating the weight of cocaine and erred in assigning an enhancement for obstruction of justice; and (5) Velez-Acosta's sentence was

otherwise procedurally and substantively unreasonable. For the following reasons, we affirm the district court on all issues.

## I.    Subject Matter Jurisdiction

Because we write for the parties and assume their familiarity with the record, we set out only what is necessary to explain our decision.

We review the district court's subject matter jurisdiction de novo. *United States v. Gruezo*, 66 F.4th 1284, 1290 (11th Cir. 2023) (per curiam). We review the district court's factual findings supporting its jurisdictional determinations for clear error. *Id.*

The MDLEA extends U.S. jurisdiction to vessels without nationality. 46 U.S.C. § 70502(c)(1)(A). Vessels without nationality include those for which: (1) "the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed"; (2) "the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel"; (3) "the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality"; and (4) "no individual, on request of an officer of the United States authorized to enforce applicable provisions of United States law, claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry" in the form of documents or a national flag. *Id.* § 70502(d)(1)(A)–(D), (e)(1)–(2).

Jurisdiction is designated by statute as not an element of the offense and instead a "preliminary question[] of law to be determined solely by the trial judge." *Id.* § 70504(a). "[A] certification by the Secretary of State or his designee serves as *conclusive proof* of jurisdiction." *United States v. Hurtado*, 89 F.4th 881, 893 (11th Cir. 2023) (per curiam) (emphasis in original).

Here, Cabrera Perez argues that the Coast Guard would have had to request the vessel's nationality to establish jurisdiction under the MDLEA, and the evidence is ambiguous as to whether it did. The government responds that the right-of-visit form shows, and the district court repeatedly found, that Coast Guard Officer Oliveira asked if any of the crew of the *Jorge* wished to make a verbal claim of nationality, and Velez-Acosta responded. This, it argues, satisfies the jurisdictional requirements because Oliveira was a Coast Guard sailor authorized to enforce U.S. law. Cabrera Perez replies that Oliveira's testimony confused place of origin, vessel nationality, and the Defendants' nationality and no one else spoke to the Defendants, so jurisdiction was not proven beyond a reasonable doubt.

Here, the district court correctly determined that it had jurisdiction. First, the government submitted a jurisdictional certification from the State Department saying that: the person in charge aboard the *Jorge* had not made a claim of nationality; the country of their last port of call, Ecuador, was not able to confirm or deny nationality; and the U.S. thus had jurisdiction. Such a form is ordinarily conclusive proof of U.S. jurisdiction. *Hurtado*, 89 F.4th at

893.  Second, to the extent a State Department jurisdictional certification becomes open to challenge based on other evidence, the other evidence in this case is not inconsistent with U.S. jurisdiction. The right-of-visit form submitted by the government indicates that the Defendants were asked to make a nationality claim for the *Jorge*, and Velez-Acosta claimed Ecuadorian nationality.  Oliveira testified at trial that he asked if anyone aboard the *Jorge* wanted to make a claim of nationality for the vessel, and none of the Defendants responded.  Though these are inconsistent with each other, and the right-of-visit form appears to be inconsistent with the jurisdictional certification, each version of events is enough to establish jurisdiction.  If Velez-Acosta claimed Ecuadorian nationality for the *Jorge*, then Ecuador's uncontroverted inability to confirm or deny that assertion establishes jurisdiction.  46 U.S.C. § 70502(d)(1)(A), (C). If, on the other hand, no one aboard the *Jorge* claimed nationality when Oliveira requested that they do so, as the jurisdictional certification indicates and Oliveira testified to, then that also satisfactorily establishes jurisdiction.  *Id*. § 70502(d)(1)(B), (D).  Accordingly, the district court did not err in finding that it had jurisdiction.

## II.    Evidentiary Challenges

"We review the district court's evidentiary decisions only for a clear abuse of discretion."  *United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making its determination, or makes clearly erroneous factual findings."  *United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir. 2021).  Evidentiary rulings not objected to below are reviewed only

for plain error. *United States v. Graham*, 981 F.3d 1254, 1260 (11th Cir. 2020). Plain error occurs where there is: "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and . . . (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (alteration in original) (quotation marks omitted). For an error to be plain, the issue must be specifically resolved by the operative text of the statute or by precedent from our circuit or the Supreme Court. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).

We will not reverse on the basis of harmless error. *United States v. Barton*, 909 F.3d 1323, 1337 (11th Cir. 2018). An error is harmless unless "there is a reasonable likelihood that [it] affected the defendant's substantial rights." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990). However, the harmlessness of errors is evaluated together under the theory of cumulative error. *United States v. Labarbera*, 581 F.2d 107, 110 (5th Cir. 1978).[1]

The Federal Rules of Evidence instruct that the authenticity of evidence is proven by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Some kinds of evidence bypass this requirement by being "self-authenticating" under Rule 902, for instance, if they are foreign public documents signed by someone authorized under that

---

[1] All decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

country's laws or certified foreign records of a regularly conducted activity. Fed. R. Evid. 902(3), (12). The procedures laid out for authenticating self-authenticating documents are not exclusive. *United States v. Williams*, 865 F.3d 1328, 1343 (11th Cir. 2017). Thus, seized foreign documents can be authenticated by evidence which establishes: (1) that it appears, to an experienced witness, to conform to the normal requirements of that type of document; and (2) the chain of custody from the time of seizure. *See id.*

Hearsay is an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). While hearsay is not generally admissible, there are numerous exceptions to this rule. Fed. R. Evid. 802–804, 807. Among those is an exception for a public record that sets out the activities of a public office or a matter observed by a public officer under a legal duty to report (except by law-enforcement personnel) the circumstances of which do not show a lack of trustworthiness. Fed. R. Evid. 803(8). Additionally, under the residual exception, hearsay is admissible when (1) it "is supported by sufficient guarantees of trustworthiness," (2) it is more probative on the point than any other reasonably obtainable evidence, and (3) the proponent gave notice of its intent to offer the evidence. Fed. R. Evid. 807.

Lay witnesses must testify from personal knowledge, but experts need not. Fed. R. Evid. 602. Experts are instead required to base their opinion on facts that they have personally observed or which they have been made aware. Fed. R. Evid. 703. To qualify as an expert, a witness must have specialized knowledge helpful to

the trier of fact, rely on sufficient facts and data, use reliable principles and methods, and reliably apply the principles and methods to the particular facts of the case. Fed. R. Evid. 702; *see also United States v. Ware*, 69 F.4th 830, 845–46 (11th Cir. 2023) (emphasizing the "three prongs—qualification, reliability, and helpfulness"), *petition for cert. filed* (U.S. Oct. 26, 2023) (No. 23-5946).

Leading questions are permitted on direct examination only when "necessary to develop the witness's testimony." Fed. R. Evid. 611(c). A district court's discretion to control the use of leading questions can be abused "where the questions asked have the effect of supplying a witness with a 'false memory'." *United States v. Cooper*, 606 F.2d 96, 98 (5th Cir. 1979) (per curiam). However, the failure of the defense to point to specific instances where the witness's memory may have been affected (as opposed to merely asserting a cumulative effect) is deleterious to a claim that the use of leading questions impacted the fairness of the trial. *See id.*

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

Here, evidentiary challenges are raised as to the following: authenticity of Cabrera Perez's Mexican passport; IONSCAN evidence; Joseph Brown's expert testimony; and Steven Ray's expert testimony. The district court's evidentiary decisions were not erroneous, and we address each in turn.

First, the district court did not abuse its discretion in finding that Cabrera Perez's passport was authenticated, as testimony established that it was the same document as was seized from Cabrera Perez's person and it appeared, to a witness familiar with Mexican passports, to be a Mexican passport. It was not necessary that it be authenticated by a Mexican official. And the district court did not plainly err in admitting the Bogotá stamp, as it is *prima facie* covered by the public records or residual exceptions because: (1) the stamp reports the activities of a public office presumably under a legal duty to so report; (2) passport stamps are usually trustworthy; and (3) notice was offered in the government's exhibit list Further, the Defendants point to no caselaw directly holding that it would have been improper to admit it thereunder.

Second, the district court did not plainly err in admitting the IONSCAN evidence as the Defendants have not pointed to any rule or caselaw clearly establishing that IONSCAN evidence gathered in such circumstances is inadmissible. The proper remedy for their concerns regarding potential contamination of the tests—which they adopted at trial—was vigorous cross-examination and the presentation of contrary evidence. *Daubert*, 509 U.S. at 596.

Third, the district court did not plainly err in admitting Joseph Brown's testimony. Brown testified that: (1) he had specialized knowledge in chemistry as a result of his education, research, and position within the Coast Guard; (2) he is a qualified IONSCAN machine operator and trainer; and (3) he reviewed the IONSCAN machine logs from the *Bertholf*, read some of the reports

of the *Jorge* interception, and discussed the incident with Jones. Brown testified regarding the likely validity of the IONSCAN test results, an important issue in the case. As such, he was qualified to testify as an expert witness and therefore permitted to rely upon facts which he had been made aware of for the case. The Defendants point to no caselaw establishing that it was improper to permit him to testify as an expert or for him to rely on information gathered from conversations with witnesses.

Fourth, the district court did not plainly err in admitting Steven Ray's testimony, as, like Brown, he was qualified to testify as an expert and therefore permitted to rely on facts which he had been made aware of. Ray testified he had substantial experience with drug smuggling, including in the eastern Pacific, and that he was familiar with the route taken by the *Jorge* and had reviewed reports and aerial photographs. The Defendants pointed to no caselaw holding that he had insufficient specialized knowledge or specific facts to be permitted to testify.

Fifth and finally, the district court did not plainly err in failing to strike Ray's testimony because, though the government used leading questions many times during its direct examination, each objection raised on that basis was sustained and the Defendants neither point to specific instances where they allege that Ray's memory was altered by the leading questions nor to caselaw directly holding in similar circumstances that the use of leading questions infected the remainder of a witness's testimony such that it should have been excluded.

With none of the district court's individual evidentiary decisions constituting error, the Defendants have also not shown cumulative error. *Labarbera*, 581 F.2d at 110. Accordingly, the district court's evidentiary decisions were not in error.

### III.    Sufficiency of the Evidence

"We review a district court's decision to deny a motion for judgment of acquittal based on sufficiency of the evidence de novo." *United States v. Dulcio*, 441 F.3d 1269, 1276 (11th Cir. 2006) (per curiam). When doing so, the evidence is to be considered in the light most favorable to the government, with all reasonable factual inferences drawn in favor of the verdict. *Id.* A verdict is to be affirmed "if a reasonable fact-finder could have reached a conclusion of guilt beyond a reasonable doubt." *United States v. Majors*, 196 F.3d 1206, 1210 (11th Cir. 1999). "It is not necessary for the government to disprove every reasonable hypothesis of innocence, as a jury is free to choose among reasonable constructions of the evidence." *Id.* (quotation marks omitted). We defer to a credibility determination by a factfinder "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation marks omitted).

Under the MDLEA, it is a crime to possess with intent to distribute a controlled substance aboard a covered vessel. 46 U.S.C. § 70503(a)(1). Covered vessels include any vessel subject to the jurisdiction of the United States. *Id.* § 70503(e)(1). If the controlled substance possessed was five kilograms or more of cocaine,

then the possessor is subject to between ten years and life imprisonment. *Id.* § 70506(a); 21 U.S.C. § 960(b)(1)(B). If the amount of cocaine was less than five kilograms, lower penalties apply. 21 U.S.C. § 960(b)(2)–(3). If a defendant is sentenced under the higher range, the drug quantity must be proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

A conspiracy to violate the prohibition on possession with intent to distribute aboard covered vessels is subject to the same punishments as direct possession with intent to distribute. 46 U.S.C. § 70506(b). "To establish a conspiracy, the government must prove beyond a reasonable doubt that two or more persons entered into an unlawful agreement to commit an offense, that the defendant knew of the agreement, and that he voluntarily became a part of the conspiracy." *United States v. Cruickshank*, 837 F.3d 1182, 1188 (11th Cir. 2016). "In maritime drug-trafficking cases, a jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present." *United States v. Wilchcombe*, 838 F.3d 1179, 1188 (11th Cir. 2016) (alteration adopted) (quotation marks omitted). Factors include: (1) the length of the voyage, (2) the amount of contraband, (3) the relationship between captain and crew, (4) "the obviousness of the contraband," and (5) "suspicious behavior or diversionary maneuvers." *Id.* at 1188–89. Those who aid or abet an offense are also punishable to the same degree as a principal. 18 U.S.C. § 2(a).

It is "anomalous to reverse some convictions and not others when all defendants suffer from the same error" and we have, on that basis, waived the requirement that issues be raised in each defendant's brief. *United States v. Gray*, 626 F.2d 494, 497 (5th Cir. 1980).

As an initial matter here, to the extent some of the Defendants failed to adequately brief this issue, we waive the forfeiture as Cabrera Perez sufficiently raised it; it would be anomalous to reverse as to Cabrera Perez alone, if reversal is warranted.

However, reversal is not warranted as the government presented sufficient evidence to obtain the Defendants' convictions. First, the IONSCAN evidence showed that cocaine had been present aboard the Defendants' vessel and the jury was entitled to rely on such evidence. Second, the reason the Defendants gave for their circumstances when apprehended by the Coast Guard (that they had been fishing in the Galapagos Islands and then robbed by pirates) was obviously false. Third, the length of the voyage, the fact that items containing contraband were jettisoned in view of the full crew, and testimony that the Defendants would huddle up before answering questions, entitled the jury to conclude that they comprised a conspiracy and aided and abetted each other in possessing the cocaine. Fourth, a reasonable jury could conclude beyond a reasonable doubt that the jettisoned contraband contained at least five kilograms of cocaine, given the testimony regarding the number of bales jettisoned, the average weight of bales, the usual minimum load for such a voyage, and the fact that two defendants lifted

each bale.  Therefore, viewing all evidence in the light most favorable to the government and drawing all reasonable inferences in its favor, the evidence was sufficient to support the conspiracy charge under the MDLEA.  As such, this claim fails.

### IV.    Drug Weight Calculation for Sentencing

"[W]e normally . . . review sentences under an abuse of discretion standard" but factual findings relating to that sentence are reviewed for clear error, and the "application of those facts to justify a sentencing enhancement" is reviewed de novo.  *Ware*, 69 F.4th at 854 (quotation marks omitted).  For an error to be clear, we, "after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed."  *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation marks omitted).  If a defendant makes a factual objection at the trial court level, the government "has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence."  *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) (quotation marks omitted).  District courts must "calculate correctly the sentencing range prescribed by the Guidelines."  *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005).  A factor to be considered in parallel to the Guidelines calculations is the need to avoid unwarranted disparity with other similarly situated defendants.  18 U.S.C. § 3553(a)(4), (6).

Generally, under the Sentencing Guidelines, the base offense level of an offender who commits possession with intent to distribute is defined by the weight of drugs involved unless they

have prior offenses or specific harms resulted from their offense. *See* U.S.S.G. § 2D1.1(a). For any quantity between 50 and 150 kilograms of cocaine, that base offense level is 34. *Id.* § 2D1.1(c)(3). The base offense level decreases with decreasing amounts, with the lowest being a level of 12 for less than 50 grams of cocaine. *Id.* § 2D1.1(c)(4)–(14). "Where there is no drug seizure . . . the court shall approximate the quantity of the controlled substance." *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996) (quotation marks omitted). The approximation "may be based on fair, accurate, and conservative estimates of the drug quantity attributable to a defendant, [but it] cannot be based on calculations of drug quantities that are merely speculative." *United States v. Reeves*, 742 F.3d 487, 506 (11th Cir. 2014) (quotation marks omitted).

The Sentencing Guidelines provide a two-level enhancement for obstruction of justice "[i]f (1) the defendant willfully obstructed . . . or attempted to obstruct or impede, the administration of justice with respect to the . . . instant offense of conviction, and (2) the obstructive conduct related to" the defendant's crime of conviction or a related crime. U.S.S.G. § 3C1.1. The examples of covered conduct given in the application notes include "destroying or concealing . . . evidence that is material to an official investigation or judicial proceeding." U.S.S.G. § 3C1.1 comment. (n.4(D)). Additional "material hindrance to the official investigation or prosecution . . . or the sentencing" must be shown if the destruction "occurred contemporaneously with arrest." *Id.*

Here, the district court neither clearly erred in calculating the drug weight nor erred in enhancing the Defendants' sentences for obstructing justice. First, the district court's drug weight determination is supported by Ray's testimony that six bales of cocaine were jettisoned, that cocaine bales normally weigh between 20 and 40 kilograms, that a vessel like that of the Defendants' normally carries no less than 200 kilograms, and the effort used to jettison the bales appeared to equal the effort used to jettison 15-gallon fuel or water containers. It was not clear error for the district court to give a conservative estimate of 120 kilograms of cocaine based on this evidence. Second, the district court did not err in enhancing the Defendants' sentences for obstructing justice, as they destroyed evidence by jettisoning it into the Pacific, as this hindered the government's efforts by requiring them to present additional evidence regarding the presence and quantity of cocaine. Because the need to avoid unwarranted sentencing disparities is to be considered in parallel to the Sentencing Guidelines and the district court was obligated to calculate the Guideline range correctly, sentencing disparity is no reason not to assign an otherwise warranted enhancement in Guideline calculations. 18 U.S.C. § 3553(a)(4), (6); *Crawford*, 407 F.3d at 1178. Accordingly, the district court did not err in assigning the Defendants an enhancement for obstruction of justice.

## V.    Reasonableness of Sentence

When reviewing a sentence for reasonableness, we normally use a two-step process, whereby we first ensure that the district court committed no significant procedural error. *United States*

*v. Trailer*, 827 F.3d 933, 935–36 (11th Cir. 2016) (per curiam). Procedural errors include failing to calculate or improperly calculating the Guideline range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guideline range. *Id.* at 936. For a sentence to be procedurally reasonable, the district court must consider the § 3553(a) factors, but it is not required to state on the record that it has explicitly considered each of the factors or to discuss each factor individually. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013). Instead, an acknowledgement by the court that it considered the § 3553(a) factors is sufficient. *See id.* Similarly, a district court must explain its decision relative to any nonfrivolous arguments raised by each side, but it can be enough in simple matters if the record demonstrates that the court understood each parties' arguments and stated that the sentence it imposed was "appropriate." *Rita v. United States*, 551 U.S. 338, 356–59 (2007).

Assuming that the district court's sentencing decision is procedurally sound, we will consider the substantive reasonableness of the sentence imposed under an abuse of discretion standard in light of the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 51 (2007). The Supreme Court has held that a defendant's argument for a specific sentence in the district court preserves for appeal his claim that a longer sentence was substantively unreasonable. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020).

We will vacate a sentence "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quotation marks omitted). We may not "set aside a sentence merely because we would have decided that another one is more appropriate" because the district court's sentence need only be "a reasonable one." *Id.* at 1191. The party challenging the sentence bears the burden of showing it to be unreasonable in light of the record and the § 3553(a) factors. *United States v. Langston*, 590 F.3d 1226, 1236 (11th Cir. 2009). We normally presume a Guidelines-range sentence is reasonable. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). The Guideline range for a defendant at an offense level of 36 and criminal history category of I is 188 to 235 months' imprisonment. U.S.S.G. Ch. 5, Pt. A.

The district court must issue a sentence "sufficient, but not greater than necessary" to comply with the purposes of 18 U.S.C. § 3553(a)(2). These purposes include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. *Id.* Additional considerations include the nature and circumstances of the offense, the history and characteristics of the defendant, the applicable Guideline range, the need to avoid unwarranted sentence disparities among similarly

situated defendants, and the pertinent policy statements of the Sentencing Commission. *Id*. § 3553(a)(1)–(7).

Here, Velez-Acosta argues the district court made additional sentencing errors by failing to consider, or rejecting without explanation, his arguments for a variance based on the offense circumstances and his own characteristics. He further argues that the court did not consider the relevant § 3553(a) factors in crafting his sentence.

Velez-Acosta's sentence is procedurally and substantively reasonable. First, the district court correctly rejected Velez-Acosta's challenges to his Guideline range, and the only other procedural reasonableness argument raised is that the court did not sufficiently address his variance request. The record establishes that the district court was aware of and considered his request for a variance and denied it because it considered the sentence it actually issued appropriate. The court also noted that it considered the § 3553(a) factors and considered the sentence sufficient and not greater than necessary. Though more could have been said, what the district court did say is enough to establish that the sentence it issued was procedurally reasonable under our prior precedent. Second, Velez-Acosta's sentence is substantively reasonable despite his need to care for his family and the poor social conditions within Ecuador (his home country). His sentence was within, notably at the lower end of, the range established by the Sentencing Guidelines, and it reflected the seriousness of his offense and the need to

deter similar large smuggling operations. Accordingly, his sentence is substantively reasonable, and we affirm as to this issue.

## VI.    Conclusion

For the foregoing reasons, we affirm.

**AFFIRMED.**